## A97A1898. CARTER v. THE STATE.
(491 SE2d 525)

ELDRIDGE, Judge.

A Fulton County jury found appellant Ronald Carter guilty of two counts of armed robbery arising from the following set of facts, viewed in a light most favorable to the verdict. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

After a brief visit with friends at the Eagen Public Housing Project, brothers Russell Moore and Bernard Moore, along with their 12-year-old cousin, Johnny Harris, walked toward Russell's 1976 Ford LTD to leave. Appellant and an as-yet unidentified accomplice approached the group. Appellant put a gun to Russell Moore's head and told him, "You know what it is." Appellant took the keys to the LTD and went through Russell's pockets, taking money and a pager. Appellant then aided his accomplice in searching Bernard Moore's pockets; money was removed from Bernard's pockets and gold rings were removed from his fingers. Johnny Harris observed the entire incident. Thereafter, appellant instructed the Moore brothers to drop their pants down to the knees and to run across an adjoining field; Harris ran with them. Appellant and his accomplice took Russell Moore's car.

After reaching safety, the victims called the police and reported the incident. Russell Moore's car was recovered the next day. Several items had been removed from the car, including Russell's Washington Redskins Starter jacket.

The following day, two days after the armed robbery, Russell Moore received a telephone call from a friend, informing him that the person who had robbed him was standing outside Eagen Homes; the Moore brothers immediately drove to Eagen homes and recognized appellant who was standing outside; appellant was wearing Russell Moore's Redskins jacket. The victims drove to a nearby service station and called the police; they asked for the same officer who had responded to the original armed robbery call. The officer arrived at the service station, and the brothers informed him of appellant's location and told him that appellant was wearing the Redskins jacket. The officer apprehended appellant, who had attempted to run, and returned him to the service station for an identification. Both Moore

brothers, without hesitation, identified appellant as the one who had robbed them two days earlier. In addition, at trial Johnny Harris positively identified appellant as the one who held the gun during the armed robbery of the Moore brothers.

1. In his first enumeration of error, appellant contends that the trial court erred in denying his motion to suppress the victims' in-court identification as tainted by the one-on-one showup at the service station two days after the armed robbery; appellant contends that this showup was impermissibly suggestive. We do not agree.

Generally, "[i]n cases involving line-ups and show-ups, an accused, already under suspicion by the state, is confronted by his accuser under conditions controlled by the state." (Punctuation omitted.) *Curtis v. State*, 183 Ga. App. 6, 7 (357 SE2d 849) (1987). However, in the case sub judice, the accusers located appellant and spontaneously recognized him at a time when he was not under police suspicion for the commission of any crime. Appellant was identified by his accusers *before* the showup about which he complains. Certainly the fact that appellant was wearing the victim's Redskins jacket was not prompted by any action on the part of the police officer which would raise issues of improper and prejudicial influence by the State, and without improper State action, the fact that the jacket worn by appellant may have played a part in the victims' identification would go to the weight, not the admissibility, of this evidence pursuant to a motion to suppress. *Gilstrap v. State*, 250 Ga. 814, 816 (1) (301 SE2d 277) (1983).

In addition, "both state and federal courts have also recognized consistently those countervailing considerations which may render the one-on-one confrontation permissible if not desirable. These include the necessity of a speedy police investigation and the necessity to resolve promptly any doubts as to identification so as to enhance the accuracy and reliability of the identification, thus expediting the release of innocent subjects. [Cits.]" (Punctuation omitted.) *Baynes v. State*, 218 Ga. App. 687, 688 (463 SE2d 144) (1995). Under the totality of the circumstances, we find no likelihood of misidentification in the case sub judice and thus no taint as a result of the subsequent showup at the service station after the victims had identified appellant and called the police. See *Neil v. Biggers*, 409 U. S. 188 (93 SC 375, 34 LE2d 401) (1972). Both victims testified as to the sunny, daylight conditions that marked their unobstructed view of appellant for the approximately five minutes in which the armed robbery occurred. Appellant did not wear a mask or otherwise attempt to conceal his appearance. Both victims testified that appellant was recognized by his facial features, not the fact that he was wearing Russell Moore's jacket at the time of the showup. Further, Johnny Harris, who was not present at the showup, corroborated the victims' identi-

fication of appellant as one of the perpetrators. See *Williams v. State*, 188 Ga. App. 496, 498 (2) (373 SE2d 281) (1988). "[I]n the absence of evidence of record demanding a finding contrary to the judge's determination, we will not reverse the ruling denying the suppression. The evidence was sufficient to show that this [showup] was not impermissibly suggestive." (Citations and punctuation omitted.) *Wright v. State*, 211 Ga. App. 474, 477 (3) (440 SE2d 27) (1993).

2. At trial, appellant testified on direct examination that he bought the victim's pager, as well as his jacket, from a man named "Michael Pitts" who was selling both items for $45 between two buildings in Eagen Homes. On cross-examination, appellant testified that he bought the pager because he regularly resells pagers and cellular telephones to a man named "John," who reactivates them and sells them again. In his second enumeration, appellant claims as error the prosecutor's cross-examination inquiry as to whether "John" might buy stolen goods; appellant contends that such inquiry regarding the possibly illegal activities of *"John"* improperly reflected upon appellant's character. We find that, if such is the case, appellant opened the door to the inquiry.

Appellant introduced on direct examination the evidence regarding his alleged purchase of the victims' property between the apartment buildings in Eagen Homes for significantly less than full price. Thus, cross-examination was proper thereon, including inquiry as to where the items came from, why appellant wanted to buy the items, the questionable circumstances surrounding the sale, and what appellant planned to do with the pager, since evidence showed that appellant already owned two pagers. Such inquiry legitimately included questions reflecting upon appellant's intent with regard to the possible purchase of goods that might be stolen and the re-sale thereof. OCGA § 24-9-64.

Moreover, from the record it seems that the jury would be entitled to conclude the circumstances of appellant's alleged purchase of the items from "Michael Pitts" appear less than legitimate, and appellant testified that at the time of purchase, he did not know if the items were stolen or not. Clearly, then, appellant's voluntary testimony on direct examination that he *purchased* items from "Michael Pitts," who possibly deals in stolen goods, is no less reflective of his character than his complained of testimony on cross-examination that he *sells* items to "John," who possibly deals in stolen goods. The record shows that the line of questioning about which appellant complains properly explored appellant's explanation for his possession of the stolen items, and the validity of appellant's contentions that he was not the person who committed the armed robbery against the victims. See *Jones v. State*, 257 Ga. 753, 754 (1) (363 SE2d 529) (1988).

3. We find no error in the trial court's denial of appellant's motion to disqualify Ruby Grant from jury service pursuant to OCGA § 15-12-163. Appellant's contention that Grant was unable to hear provides no basis for disqualification under that Code section;[1] and, other than this bare assertion, there is no evidence of record in support of appellant's contention. Accordingly, the trial court did not abuse its discretion by failing to remove the juror. *Hayes v. State*, 261 Ga. 439, 441 (2) (405 SE2d 660) (1991); *Robinson v. State*, 180 Ga. App. 248, 249 (2) (348 SE2d 761) (1986).

*Judgment affirmed. Ruffin, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED SEPTEMBER 2, 1997.

*Viveca B. Famber*, for appellant.
*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Assistant District Attorney*, for appellee.

---

[1] It must be noted that striking for cause a juror based upon a physical disability which is cognizable under the Americans with Disabilities Act of 1990, 42 USC § 12101 et seq., without making an attempt at a reasonable accommodation for the disability, may constitute a violation of the Act, if, as in the case sub judice, the juror wanted to serve.