## A01A0747. JONES v. THE STATE.
(548 SE2d 75)

ANDREWS, Presiding Judge.

In a bifurcated proceeding, Gerald Dexter Jones was convicted of providing a false name to a law enforcement officer and acquitted of obstructing an officer. During the second phase of the trial, Jones was convicted of possession of a firearm by a convicted felon and carrying a concealed weapon. Jones appeals the trial court's rulings on his *Batson* challenge and his motion for mistrial. After review, we affirm.

1. Jones contends that the State violated the equal protection clause by exercising a peremptory strike against a juror whom the prosecutor regarded as disabled.

A prospective juror cannot be struck for cause purely on the basis of a hearing impairment. *Carter v. State*, 228 Ga. App. 335 (491 SE2d 525) (1997); see OCGA § 15-12-163. But this juror was not struck for cause. Instead, the State used one of its peremptory strikes to remove her.

During voir dire, Claudia Griffeth, an older African-American woman, experienced intermittent difficulty in hearing the prosecutor. On occasion, she could hear the prosecutor's comments, and at other times she said she could not. At the conclusion of individual voir dire and after listening to her responses to questions posed by the court, the prosecutor, and defense counsel, the court noted: "Well, I think she — she hears things pretty well. We'll just have to talk up and go from there. If you're selected to serve on this jury, what I will ask you ma'am, at any point in time during the course of the trial you cannot hear a witness testifying, or you cannot hear or understand lawyers speaking, that you will let me know. All right." After she agreed to do so, voir dire continued.

After selection of the jury, Jones asserted a challenge under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), premised on the State's use of four of five strikes against African-Americans including Griffeth.[1] The trial court conducted a *Batson* hearing. As to this prospective juror, the prosecutor stated: "I struck Ms. Griffeth because she apparently had difficulty hearing me talk. Now, she may have been able to hear other things and I would hope

---

[1] The prosecutor noted the defense had used 11 of 12 strikes against white veniremen. See *Georgia v. McCollum*, 505 U. S. 42 (112 SC 2348, 120 LE2d 33) (1992).

that I could hold my voice up, but I can't promise anyone that I'll always be focused on whether Ms. Griffeth can hear me or not. And she did indicate right up here she had trouble hearing me." After the State's proffer, defense counsel argued that the explanation was pretextual and impermissibly based on race as well as disability. The trial court disagreed and found that Jones, as the opponent of the strikes, had not carried his burden.

When a party alleges a *Batson* violation and shows the existence of a prima facie case, the proponent of the strike must offer racially neutral, legitimate, and nondiscriminatory reasons for the use of its peremptory challenge. See *Williams v. State*, 271 Ga. 323, 325 (2) (519 SE2d 232) (1999). A strike may be based on mistake, ignorance, or idiosyncracy provided that the reason for the strike is race-neutral. *Howard v. State*, 243 Ga. App. 836, 837 (534 SE2d 202) (2000). The opponent of the strike bears the burden of persuading the trial court that the proponent of the strike acted with discriminatory intent in exercising the strike. *Turner v. State*, 267 Ga. 149, 151 (2) (476 SE2d 252) (1996). After reviewing the transcript and considering the trial court's findings with great deference, we cannot say the court's ruling was clearly erroneous. *Howard*, 243 Ga. App. at 838.

2. Jones contends that the trial court erred by allowing the State to rebut a prima facie case of racial discrimination in jury selection by stating it had exercised a peremptory strike against a black juror based on that juror's hearing disability since that juror was protected from discrimination against the disabled by the Americans with Disabilities Act (ADA), 42 USC § 12101 et seq. Jones argues that an irrational and illegitimate reason cannot be used in defending a *Batson* challenge.

Without question, it is impermissible to exercise a peremptory challenge on the basis of race or gender. *Batson*, supra; *J. E. B. v. Alabama*, 511 U. S. 127 (114 SC 1419, 128 LE2d 89) (1994); *Tedder v. State*, 265 Ga. 900, 901 (2) (463 SE2d 697) (1995). But here, neither race nor gender was at issue. As to Jones' equal protection argument, the U. S. Supreme Court has decided that the disabled, as a group, do not constitute a "suspect class" or a "quasi-suspect classification." *City of Cleburne v. Cleburne Living Center*, 473 U. S. 432, 442 (105 SC 3249, 87 LE2d 313) (1985).

Even assuming, without deciding, that the ADA had any application to these particular facts, the appropriate level of review is rational basis analysis. See *Cleburne*, 473 U. S. at 445-447. "[S]tate action subject to rational-basis scrutiny does not violate the Fourteenth Amendment when it 'rationally furthers the purpose identified by the State.' [Cit.]" *Bd. &c. of the Univ. of Alabama v. Garrett*, 531 U. S. 356 (II) (121 SC 955, 964, 148 LE2d 866) (2001). As noted in a federal circuit decision, "where a classification is subject only to

'rational basis' review, the state may use its peremptory challenges to strike jurors for any reason rationally related to the selection of an impartial jury." *United States v. Harris*, 197 F3d 870, 874 (7th Cir. 1999). "Unlike race or gender, disability may legitimately affect a person's ability to serve as a juror." Id. at 875.

Here, in exercising the peremptory strike, the prosecutor articulated concerns that he would not be able to hold his voice up and that this juror had indicated she had trouble hearing him even when he was close to her. These reasons do not appear so implausible or so fantastic as to render the explanation pretextual. See *Jones v. State*, 240 Ga. App. 339, 341 (523 SE2d 402) (1999). Nor do they appear illegitimate or not rationally related to the selection of a fair and impartial jury. See *Harris*, 197 F3d at 874, n. 3 ("[p]eremptory strikes of class members not entitled to heightened scrutiny remain 'challenges without cause, without explanation and without judicial scrutiny.' [Cit.]"). Since the heightened level of review required by *Batson* and *J. E. B.* does not extend to the disabled, we find no error, even had this juror fit within the contours of the ADA. See *Cleburne*, 473 U. S. at 440-443.

3. Jones contends that the trial court erred in denying his motion for mistrial made in response to the surprise admission into evidence of a custodial statement taken in violation of *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

The statement at issue arose in the following context. At about midnight, while on patrol, Officer B. Russell heard a radio alert for a suspect named Gerald Jones wanted for questioning about a possible stolen vehicle. Russell observed an individual who seemed to fit the broadcast description. Russell noticed that this person appeared "very, very nervous" and "looked around like he was trying to figure out what to do or where to go." Suspicious, Officer Russell exited her patrol car and asked his name. Jones identified himself as "Tommy Smith." When asked if he had seen anyone come through that area, Jones nervously described two men, information that Russell found odd since she had not seen anyone else. After she thanked him, Jones started walking eastbound then reversed direction. When Jones continued to look back over his shoulder, Russell pulled the patrol car up next to him and radioed Sergeant Randy Garrett, her supervisor, for instructions. As Jones was about seven feet from her, he suddenly reached into his right pocket and "started pulling out a silver revolver." Exiting her patrol car, Russell drew her weapon and yelled at him to drop the gun. Ignoring her commands, Jones ducked behind a bush. One or two seconds later, Jones burst out from behind the bush at a full run. When Russell ordered him at gunpoint to stop, Jones complied.

After Jones was convicted on the false name charge, the case

then proceeded to the weapons charges. When asked whether she was present while another officer frisked Jones for weapons, Russell responded, "I was there but I was headed back for the bush because he had told me he didn't have the gun." Jones immediately objected and sought a mistrial on the dual grounds that Jones had not been provided with *Miranda* warnings and the remark constituted a custodial statement for which the defense had no notice as required by OCGA § 17-16-4. Outside the presence of the jury, the trial court agreed that the statement would have to be suppressed. Instead of granting a mistrial, the trial court twice issued curative instructions directing the jurors to "completely disregard that statement as though it was never said" and to "totally wipe it out of your mind." Twice, the trial court asked the jurors to indicate if they would be able to comply with the court's directive. When Russell resumed testifying, she described finding the gun Jones had pointed at her, a fully loaded pistol, on a manicured lawn next to the bush Jones had ducked behind. Russell identified a Rossi .38 special as the weapon she found that night. Defense counsel extensively cross-examined Russell about her previous testimony that Jones had not made any statement and about her police incident report that did not refer to any incriminating remark.

When a motion for mistrial is made after the presentation of an inadmissible matter to the jury, the corrective measure to be taken lies within the discretion of the trial court. *Wofford v. State*, 234 Ga. App. 316, 317 (1) (506 SE2d 656) (1998). Absent an abuse of discretion, the trial court's ruling on a motion for mistrial will not be disturbed. *Jackson v. State*, 207 Ga. App. 190, 191 (2) (427 SE2d 566) (1993).

Here, after the court gave curative instructions, none of the jurors indicated an inability to disregard the statement. See *Binns v. State*, 237 Ga. App. 719, 720 (2) (516 SE2d 583) (1999). In any event, by not renewing the motion for mistrial and by choosing, instead, to cross-examine the witness about the inconsistency, Jones waived this issue on appeal. *McAlister v. State*, 204 Ga. App. 259, 260 (419 SE2d 64) (1992). In light of the overwhelming evidence of guilt, even had the issue been preserved, the trial court did not abuse its discretion in deciding a mistrial was not necessary to preserve Jones' right to a fair trial. *Johnson v. State*, 223 Ga. App. 668, 671 (3) (478 SE2d 404) (1996).

*Judgment affirmed. Eldridge and Miller, JJ., concur.*

DECIDED APRIL 20, 2001

*Russell C. Gabriel*, for appellant.

*Kenneth W. Mauldin, District Attorney, Phillip C. Griffeth, Assistant District Attorney*, for appellee.