S10A0258. DEEN et al. v. STEVENS et al.
(698 SE2d 321)

NAHMIAS, Justice.

The primary question presented in this appeal is whether the Georgia statute that suspends the operation of the tolling statutes for mental incompetence in medical malpractice actions irrationally discriminates against the mentally incompetent in violation of the Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and Article I, Section I, Paragraph II of the Georgia Constitution of 1983. The trial court rejected this constitutional claim and dismissed the appellants' dental malpractice action based on the two-year malpractice statute of limitation. We affirm largely for the reasons stated by the Eleventh Circuit in the related case of *Deen v. Egleston*, 597 F3d 1223 (11th Cir. 2010), which is consistent with this Court's earlier decision in *Kumar v. Hall*, 262 Ga. 639, 644 (423 SE2d 653) (1992).

We also review the trial court's grant of summary judgment to the defendants on causes of action styled as simple negligence rather than dental malpractice, which were added to the complaint after the filing of the motion to dismiss based on the malpractice statute of limitation. The defendants produced evidence in support of their summary judgment motion showing that there was no genuine issue

of material fact as to these causes of action so that they were entitled to judgment as a matter of law. In response, plaintiff pointed to disputed factual issues in the record, but none of those issues, upon analysis, are material to the purported simple negligence claims. Accordingly, we also affirm the grant of summary judgment to the defendants on those claims.

1. On July 18, 2005, a dentist, Shannon Egleston, D.D.S. of Gentle Dental, examined Kenneth Deen and diagnosed multiple dental problems including a cavity, a failing bridge, and a periapical abscess around his upper left incisor where an earlier root canal had stopped working effectively. Dr. Egleston developed a treatment plan for Mr. Deen and referred him for an appointment the next day with the defendant endodontist, Randolph M. Stevens, D.D.S., to determine whether a re-treatment (that is, removing the old root canal and doing a new one) could be performed to save the upper left incisor and provide a base for repairing the failing bridge.

After examining Mr. Deen, Dr. Stevens concluded that re-treatment was appropriate, but not until the swelling from the infection had been reduced. He prescribed Mr. Deen an antibiotic to be taken four times a day for the next two weeks, explained the medication schedule and the importance of taking the antibiotic to reduce the infection, and instructed him to schedule an appointment for the re-treatment a week or two later after the antibiotic had taken effect and the swelling had gone down. Mr. Deen did not schedule the re-treatment, however, because he could not afford to pay the $900 it would cost him under his insurance plan.

Two weeks later, on August 4, 2005, Mr. Deen returned to Gentle Dental to undergo the second component of Dr. Egleston's treatment plan for him — a gross debridement to remove the large amounts of plaque and bacteria that had collected on Mr. Deen's teeth over the years. In Dr. Egleston's view, the appropriateness of the gross debridement was unrelated to the status of Mr. Deen's tooth infection. She testified in her deposition that, if anything, the gross debridement would have helped clear up the infection by removing plaque and bacteria from Mr. Deen's teeth.

A week later, on August 11, 2005, Dr. John Shutack performed a diagnostic spinal cord procedure called a lumbar myelogram on Mr. Deen. Mr. Deen collapsed at his home a few days later. Mr. Deen was diagnosed with subdural empyema, a life-threatening brain infection, and he spent the next four months in the hospital. He was permanently disabled until his death in April 2009.

On August 13, 2007, Linda Deen filed suit on behalf of herself and her husband against Dr. Shutack and others involved in the spinal cord procedure. Seven months later, on March 10, 2008, Ms. Deen filed the complaint in this case against Dr. Stevens and his

professional corporation, alleging that the endodontist committed dental malpractice by recommending re-treatment instead of extraction, failing to refer Mr. Deen to an oral surgeon for a tooth extraction, prescribing him 150 milligrams per day of the antibiotic instead of 300 milligrams per day, and not recognizing the need for immediate extraction despite noting significant drainage of pus. On March 21, 2008, Ms. Deen filed suit in federal court against Dr. Egleston for dental malpractice and other causes of action. Six weeks later, on May 7, 2008, the probate court appointed Ms. Deen as her husband's conservatrix.

Dr. Stevens and his professional corporation answered and moved to dismiss the complaint based on the two-year statute of limitation for dental malpractice claims. See OCGA § 9-3-71 (a) ("[A]n action for medical malpractice shall be brought within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred."). In response, Ms. Deen conceded that she filed the complaint more than two years after Dr. Stevens treated Mr. Deen, but she argued that the malpractice claims were nevertheless timely under the tolling provision for mental incompetence. See OCGA §§ 9-3-90 (a) ("Minors and persons who are legally incompetent because of mental retardation or mental illness, who are such when the cause of action accrues, shall be entitled to the same time after their disability is removed to bring an action as is prescribed for other persons."), 9-3-91 ("If any person suffers a disability specified in Code Section 9-3-90 after his right of action has accrued and the disability is not voluntarily caused or undertaken by the person claiming the benefit thereof, the limitation applicable to his cause of action shall cease to operate during the continuance of the disability."); *Kumar v. Hall*, 262 Ga. at 643-644 (holding that "mental retardation or mental illness" as used in OCGA § 9-3-90 includes mental incompetence). Ms. Deen acknowledged the non-tolling statute applicable to medical malpractice claims. See OCGA § 9-3-73 (b) ("Notwithstanding Article 5 of this chapter, all persons who are legally incompetent because of mental retardation or mental illness . . . shall be subject to the periods of limitation for actions for medical malpractice. . . ."). She contended, however, that it was unconstitutional because it discriminated against the mentally incompetent in violation of equal protection. Ms. Deen also amended the complaint to add causes of action for simple negligence based on the alleged failure of Dr. Stevens's staff to follow his instructions to communicate certain information to Mr. Deen and Dr. Egleston.

Rejecting the constitutional argument, the trial court granted the defendants' motion to dismiss on the ground that the malpractice claims were time-barred, and the court later granted the

defendants' motion for summary judgment on the purported simple negligence claims. Ms. Deen appealed to the Court of Appeals, which transferred the case to this Court in light of the constitutional question presented. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. II (1) ("The Supreme Court . . . shall exercise exclusive appellate jurisdiction in . . . all cases in which the constitutionality of a law . . . has been drawn in question.").

2. It is undisputed that Ms. Deen did not file the complaint in this case until March 10, 2008, more than two years after Mr. Deen's one and only visit to Dr. Stevens on July 29, 2005. Ms. Deen argues that applying the non-tolling statute to her complaint violates equal protection by arbitrarily discriminating against mentally incompetent adults. Ms. Deen's argument on appeal is premised primarily on the federal district court's opinion in her related case against Dr. Egleston, but that opinion has since been reversed by the United States Court of Appeals for the Eleventh Circuit. See *Deen v. Egleston*, 597 F3d 1223, reversing 601 FSupp.2d 1331 (S.D. Ga. 2009). We agree with the Eleventh Circuit's thorough and well reasoned analysis upholding the non-tolling statute against equal protection attack.

(a) First, we set forth the statutory scheme. As mentioned above, the statute of limitation for bringing an action for medical malpractice, which includes dental malpractice, see OCGA § 9-3-70 (a) (1), is two years from the injury. OCGA § 9-3-71 (a). Georgia law generally tolls statutes of limitation during periods of mental incompetence. See OCGA §§ 9-3-90 (a) and 9-3-91. However, a statute first enacted in 1976 expressly excludes medical malpractice actions from the tolling provisions for mental incompetence. See Ga. L. 1976, p. 1363, § 3 (codified as amended at OCGA § 9-3-73 (b)). Some rationales for the non-tolling statute are expressed in the statute itself:

> The findings of the General Assembly under this Code section include, without limitation, that a reasonable relationship exists between the provisions, goals, and classifications of this Code section and the rational, legitimate state objectives of providing quality health care, assuring the availability of physicians, preventing the curtailment of medical services, stabilizing insurance and medical costs, preventing stale medical malpractice claims, and providing for the public safety, health, and welfare as a whole.

OCGA § 9-3-73 (f).

(b) Next, we review the Eleventh Circuit's analysis in *Deen v. Egleston*, noting two points at the outset. First, while the federal courts analyzed the constitutional issue presented under only the

federal equal protection clause, " '[b]ecause the protection provided in the Equal Protection Clause of the United States Constitution is coextensive with that provided in Art. I, Sec. I, Par. II of the Georgia Constitution of 1983, we apply them as one.' " *Favorito v. Handel*, 285 Ga. 795, 797 (684 SE2d 257) (2009) (citation omitted). Second, we follow the Eleventh Circuit's decision not because that court's rulings are binding on this Court, even on federal questions, but because we find that court's reasoning to be persuasive and consistent with our decision in *Kumar v. Hall*. See *Perez v. State*, 283 Ga. 196, 198 (657 SE2d 846) (2008) ("The decisions of the Eleventh Circuit are not binding on this Court, but they are persuasive authority.").

As mentioned previously, Ms. Deen filed a federal lawsuit against Dr. Egleston shortly after she filed the complaint in this case against Dr. Stevens. Ms. Deen argued there, as she does here, that the non-tolling statute violates equal protection. The federal district court agreed with her and struck down the non-tolling statute. See 601 FSupp.2d at 1346-1347. On interlocutory appeal, however, the Eleventh Circuit unanimously reversed that ruling. The Eleventh Circuit summarized the district court's analysis of Ms. Deen's equal protection claim as follows:

> The district court first reviewed Georgia's legislative scheme, noting that the mentally incompetent are usually entitled to tolling of the statute of limitations, but that there is no tolling for the mentally incompetent in medical malpractice. It then applied what it claimed to be rational basis review, though there is some indication that the court was applying some sort of heightened standard. It concluded that the legislative scheme violated the Equal Protection Clause.
>
> The court stated that none of the recited legislative objectives was served by denying the mentally incompetent the benefits of tolling in cases of medical malpractice, and that there was no rational basis for treating the mentally incompetent differently from those asserting medical malpractice suits under the foreign object rule, those making contribution claims, or those who had been killed by medical malpractice. It concluded that the legislation "rests on an 'irrational prejudice' against the mentally incompetent."

*Deen v. Egleston*, 597 F3d at 1227 (citations omitted) (language quoted by district court and Eleventh Circuit taken from *City of Cleburne, Texas v. Cleburne Living Center*, 473 U. S. 432, 450 (105 SC 3249, 87 LE2d 313) (1985)).

The Eleventh Circuit then accurately described the interplay among the two-year statute of limitation for medical malpractice actions, the general tolling provisions for mental incompetence, and the non-tolling statute's exception to the general rule.

> In short, under Georgia law, the statute of limitations for actions in medical malpractice is two years. The legally incompetent are generally permitted to toll actions until their legal incompetence passes, but may not toll in cases of medical malpractice. Nevertheless, three discrete categories of parties — foreign object plaintiffs, unrepresented estates, and contribution claimants — may toll their medical malpractice actions.

Id. at 1229. The Eleventh Circuit also recited the General Assembly's legislative findings supporting the non-tolling statute and conducted the equal protection analysis "with the express understanding that Georgia has fashioned its statutes of limitations regarding medical malpractice in an attempt to ensure to its citizens affordable access to quality healthcare, and that one part of this effort is to stem what it perceived as the filing of stale medical malpractice suits." Id.

The Eleventh Circuit applied rational basis as opposed to some form of stricter equal protection review, correctly finding that the non-tolling statute " 'neither proceeds along suspect lines nor infringes fundamental constitutional rights.' " *Deen v. Egleston*, 597 F3d at 1230 (citation omitted). The dissent claims that it is "accepting, arguendo, that the mentally incompetent are not entitled to treatment as a suspect class." Dissenting Op. at 615. However, much of the dissent is devoted to discussing the serious difficulties faced by persons who, tragically, are mentally incompetent, as well as by those who love and support them. See id. at 613-614, 617. Although the dissent presents those points as relating to the proper application of rational basis review, the challenges faced by the mentally disabled are more properly considered in deciding whether that category of individuals, or others facing mental and physical disabilities, should be treated as a suspect class for purposes of equal protection analysis, in which case legislation affecting them differently would be analyzed under a stricter standard of constitutional review.

While the arguments for that approach are not insubstantial, they have previously been made to, and squarely rejected by, the Supreme Court of the United States, and this Court has taken the same position. As the Eleventh Circuit explained, *"City of Cleburne* itself disavowed any heightened standard for legislation reaching the

mentally retarded." *Deen v. Egleston*, 597 F3d at 1231.

> "Because mental retardation is a characteristic that the government may legitimately take into account in a wide range of decisions, and because both State and Federal Governments have recently committed themselves to assisting the retarded, we will not presume that any given legislative action, even one that disadvantages retarded individuals, is rooted in considerations that the Constitution will not tolerate."

Id. (citing *City of Cleburne*, 473 U. S. at 446). Accord *Ambles v. State*, 259 Ga. 406, 408 (383 SE2d 555) (1989) (citing *City of Cleburne* in holding that mental incompetence is not a suspect classification for equal protection purposes).

In a later case, the United States Supreme Court reiterated the point this way:

> [T]he result of *Cleburne* is that States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational. They could quite hard headedly — and perhaps hardheartedly — hold to job-qualification requirements which do not make allowance for the disabled. If special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause.

*Board of Trustees of Univ. of Ala. v. Garrett*, 531 U. S. 356, 367-368 (121 SC 955, 148 LE2d 866) (2001). See also *Heller v. Doe ex rel. Doe*, 509 U. S. 312, 321 (113 SC 2637, 125 LE2d 257) (1993) ("We have applied rational-basis review in previous cases involving the mentally retarded and the mentally ill."); *Tennessee v. Lane*, 541 U. S. 509, 522 (124 SC 1978, 158 LE2d 820) (2004) ("[C]lassifications based on disability violate that constitutional command [of equal protection] if they lack a rational relationship to a legitimate governmental purpose."); *Sallie v. State*, 276 Ga. 506, 512 (578 SE2d 444) (2003) ("In addition, with regard to equal protection, the United States Supreme Court has not determined that the physically disabled constitute a 'suspect' or 'quasi-suspect' class." (citations omitted)); *Jones v. State*, 249 Ga. App. 327, 328 (548 SE2d 75) (2001) ("As to Jones' equal protection argument, the U. S. Supreme Court has decided that the disabled, as a group, do not constitute a 'suspect class' or a 'quasi-suspect classification.' " (quoting *City of Cleburne*, 473 U. S. at 442)).

The dissent cites no evidence whatsoever that the General Assembly's enactment of OCGA § 9-3-73 (b) in 1976 was motivated by then-existing animus toward the mentally incompetent as a class, and the dissent's view of how the law has historically treated the mentally disabled appears contradictory. Compare Dissenting Op. at 613 ("Since the earliest days of Georgia's existence as a state, we have undertaken to safeguard the legal interests of our weakest and most vulnerable citizens . . . ."), with id. at 615 (noting "the reprehensible treatment to which [the mentally incompetent] have been accorded historically"). We therefore see no basis to depart from precedent on this issue and, like the Eleventh Circuit, we apply the normal rational basis review.

In undertaking that analysis, the Eleventh Circuit recognized that " '[e]nsuring access to affordable healthcare is a legitimate legislative objective.' " *Deen v. Egleston*, 597 F3d at 1231 (quoting 601 FSupp.2d at 1343-1344). The dissent suggests that this objective is different from the ones listed in OCGA § 9-3-73 (f). See Dissenting Op. at 615-616. As is clear in the federal court opinions, however, access to affordable healthcare is not a distinct objective but instead was shorthand used to encompass many of the General Assembly's expressed goals, which are undoubtedly legitimate. See *Gliemmo v. Cousineau*, 287 Ga. 7, 11 (694 SE2d 75) (2010) ("Promoting affordable liability insurance for health care providers and hospitals, and thereby promoting the availability of quality health care services, are certainly legitimate legislative purposes."). Thus, the critical question before the Eleventh Circuit, as in this case, was whether suspending the tolling provision for mental incompetence in medical malpractice cases has a rational relationship to the Legislature's objectives.

The Eleventh Circuit emphasized the retrained nature of rational basis review of legislation:

"In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."

*Deen v. Egleston*, 597 F3d at 1230 (quoting *FCC v. Beach Communications, Inc.*, 508 U. S. 307, 314 (113 SC 2096, 124 LE2d 211) (1983)). Accord *Gliemmo*, 287 Ga. at 12 (reiterating that the party raising an equal protection challenge must show that "the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the government decision-

maker." (quoting *City of Atlanta v. Watson*, 267 Ga. 185, 188 (475 SE2d 896) (1996) (punctuation omitted)).

Ms. Deen argued to the federal appellate court, as she does to us, that suspending the tolling provisions for mental incompetence in medical malpractice cases is not rationally related to the General Assembly's stated objectives. The Eleventh Circuit, however, surveyed various appellate decisions rejecting this argument in similar cases and concluded that "the critical point is that the passage of time, more so with medical malpractice than with other forms of negligence, renders a defense more difficult." *Deen v. Egleston*, 597 F3d at 1233.

> The themes these courts have sounded are forceful and consistent. Defending law suits is hard; defending malpractice suits is harder; and defending old malpractice suits is harder still. These courts have reasonably concluded that being forced to defend stale malpractice suits increases the cost of liability insurance and renders the practice of medicine that much more expensive. Moreover, the rationales offered by these courts dovetail with the rationales offered by the state of Georgia: providing quality care, ensuring that there are enough doctors and medical services, stabilizing the market for medical insurance, barring old claims, and generally promoting public safety, health, and welfare.

Id. It follows logically that eliminating or reducing the number of exceptions to the statute of limitation will advance these goals as well, however incrementally. See id. at 1238 ("The Georgia legislature, concerned about the proliferation of medical malpractice suits and their adverse impact on the quality of healthcare, is lawfully permitted to fashion 'a partial solution to a far more general problem.' " (quoting *Schweiker v. Wilson*, 450 U. S. 221, 238 (101 SC 1074, 67 LE2d 186) (1981)).

We agree with the Eleventh Circuit that it is unnecessary to wade deeply into the ongoing debate over healthcare reform to determine whether the non-tolling statute is rationally related to the type of legitimate governmental interests identified by our Legislature. As the Eleventh Circuit said, "[w]e do not determine whether medical malpractice lawsuits are a significant driver of rising healthcare costs, nor whether tort reform has proven effective at improving access to quality care." *Deen v. Egleston*, 597 F3d at 1233. That is because, as the Supreme Court of the United States has emphasized, " '[t]he Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by

the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted.'" Id. at 1230 (quoting *FCC v. Beach Communications, Inc.*, 508 U. S. at 314). The existence and strength of the connection between medical malpractice claims generally and the objectives the General Assembly sought to further in enacting the non-tolling statute are subject to vigorous public debate with "powerful arguments on both sides of the issue." Id. at 1233. It is not the role of the courts, however, "to weigh [those policy arguments] and decide on that course which is most prudent"; instead, "it is quite enough to note the existence of a viable, ongoing debate" and to find, in accordance with the Eleventh Circuit, that the General Assembly's "approach to a particularly thorny legislative problem — embodied in its statutes of limitations — is rational." Id.

The dissent acknowledges that "[w]hether a statute is prudent or rash, whether it is directed toward substantive or trivial concerns, whether it should be enacted in light of the arguments for it or against it — those matters address themselves to the wisdom of the enactment." Dissenting Op. at 616. Despite saying that and citing cases which applied that principle to rational basis review of Georgia statutes, the dissent then suggests that we must do something different in assessing the "constitutionality of any Georgia statute." Id. In fact, the deferential standard of review the dissent first endorses is the one this Court is applying today and the one we have consistently and correctly used in deciding the constitutionality of statutes challenged on equal protection grounds where the legislation does not affect a suspect class or fundamental right. See, e.g., *Gliemmo*, 287 Ga. at 12 ("Indeed, the equal protection argument made by Appellants 'boils down to nothing more than [a] claim that the General Assembly has made a bad policy judgment . . . and [such a claim] should be directed to the General Assembly and the Governor rather than this Court.'" (citation omitted)). The dissent's rejection of our analysis again suggests, incorrectly, that heightened review is required in this context.

Even if one believed that it was appropriate for judges, on rational basis review, to try to wade into the healthcare debate and attempt to identify the relevant empirical data, analyze them, and make policy judgments based on them, the dissent makes no effort to do so. Instead, the dissent would invalidate an "act passed by our State Legislature and signed into law by our State Executive," Dissenting Op. at 616, based not on empirical evidence or careful policy evaluation but rather on "notions of decency and fairness," id. at 613. Moreover, and despite its rhetoric, the dissent indicates that it would uphold the five-year ultimate statute of repose for medical malpractice claims, which also is not tolled based on the plaintiff's

mental incompetency, because it "fulfill[s]" the Legislature's goal of preventing stale medical malpractice claims. See id. at 616. See also OCGA § 9-3-71 (b), (c); *Nichols v. Gross*, 282 Ga. 811, 814-815 (653 SE2d 747) (2007) (rejecting equal protection challenge to statute of repose as discriminating between medical malpractice and all other professional malpractice claims). In other words, the dissent would find that allowing the mentally incompetent only two years to file a medical malpractice action is utterly "arbitrary and unreasonable," Dissenting Op. at 617, but allowing them only five years to file suit is just fine. Under rational basis review, such line-drawing is the work of legislators, not judges.

Finally, like the Eleventh Circuit, we do not believe that the General Assembly's retention of other tolling provisions, in whole or in part, renders irrational its nullification of the tolling provision for mental incompetence in general medical malpractice claims. Ms. Deen points in particular to the tolling provisions for unrepresented estates, see OCGA § 9-3-92,[1] and foreign objects left in the body, see OCGA §§ 9-3-72, 9-3-73 (e).[2] However, these tolling provisions are supported by justifications that do not translate fully to the mental incompetence context. As the Eleventh Circuit observed, statutes of limitation, particularly in the medical malpractice arena, are based in significant part on legislative concern about false or frivolous claims that serve no remedial purpose but drive up the overall cost of healthcare. See *Deen v. Egleston*, 597 F3d at 1234-1235. The General Assembly could rationally conclude that where the patient has actually died, or a medical instrument or other foreign object has been found in his or her body, the risk of false or frivolous claims of medical malpractice is sufficiently reduced that any gain from suspending the tolling provisions would be outweighed by the loss of a remedy in meritorious cases. Id. at 1235. See also *Allrid v. Emory Univ.*, 249 Ga. 35, 38 (285 SE2d 521) (1982) (upholding the general

---

[1] OCGA § 9-3-92 provides as follows:

The time between the death of a person and the commencement of representation upon his estate or between the termination of one administration and the commencement of another shall not be counted against his estate in calculating any limitation applicable to the bringing of an action, provided that such time shall not exceed five years. At the expiration of the five years the limitation shall commence, even if the cause of action accrued after the person's death.

[2] OCGA § 9-3-72 provides as follows:

The limitations of Code Section 9-3-71 shall not apply where a foreign object has been left in a patient's body, but in such a case an action shall be brought within one year after the negligent or wrongful act or omission is discovered. For the purposes of this Code section, the term "foreign object" shall not include a chemical compound, fixation device, or prosthetic aid or device.

OCGA § 9-3-73 (e) states that "[t]he limitations of subsections (b) and (c) of this Code section shall not apply where a foreign object has been left in a patient's body. Such cases shall be governed by Code Section 9-3-72."

medical malpractice statute of limitation against equal protection attack, holding that the different limitation period for foreign-object cases has a rational basis). In short, the General Assembly was not required to suspend the operation of all tolling provisions in order to justify suspending the tolling provision for mental incompetence. See *Schweiker*, 450 U. S. at 238 (upholding "a partial solution to a far more general problem" under rational basis review).

(c) The Eleventh Circuit's rejection of Ms. Deen's equal protection challenge to the non-tolling statute is also consistent with this Court's 1992 opinion in *Kumar v. Hall*. Ms. Deen contends that *Kumar* is not controlling because of factual differences between that case and this one. Some distinctions exist, but they do not change the outcome of the equal protection analysis.

In *Kumar*, we held that the tolling provisions of OCGA §§ 9-3-73 (b) and 9-3-90 applied to mental incompetence. See 262 Ga. at 643-644. We then held that the mentally incompetent injured party, Carl Hall, had suffered no deprivation of equal protection or due process from the application of the non-tolling statute. See id. at 594. The dissent says that it will follow *Kumar*'s statutory holding as stare decisis, see Dissenting Op. at 614, n. 3, but it ignores the equal protection holding in the same precedent.

Ms. Deen emphasizes that in *Kumar*, we expressly declined to predict how an equal protection challenge would fare in "hypothetical situations in which an incompetent person might fail to meet the deadline of the statute of limitations because no person took an interest in his case, or because the person or persons who did act on his behalf lacked the ability to bring suit before the deadline." Id. She also points to the stipulated facts of *Kumar*, which included that the injured party "had a legal guardian to act on his behalf, and that his guardian retained counsel specifically to investigate the possibility of bringing a malpractice suit," and she notes the absence of any suggestion in *Kumar* that the plaintiff and her counsel "were in any respect unable to properly evaluate Carl Hall's malpractice claim and file it before the period of limitations ran." Id.

Ms. Deen posits three factual differences between *Kumar* and this case: (1) Mr. Deen was mentally incompetent; (2) Ms. Deen has no medical or legal expertise; and (3) Mr. Deen was not represented by a guardian or conservator until May 7, 2008, after the two-year statute of limitation had expired. The first distinction does not in fact exist, because the injured parties in both this case and *Kumar* were alleged to be mentally incompetent. See id. at 592. The second purported distinction is pure speculation, as nothing in the *Kumar* opinion suggests that Mr. Hall's guardian had any medical or legal expertise either, nor for that matter do most mentally competent plaintiffs in medical malpractice cases.

The third alleged difference — that Mr. Hall had an appointed guardian before the statute of limitation expired, while Mr. Deen did not — is also illusory. A guardian was not appointed for Mr. Hall until more than two years after the treatment that allegedly caused his injury. See id. at 640. Furthermore, like the guardian in *Kumar*, Ms. Deen felt no need to wait for a formal appointment as her husband's conservatrix before obtaining counsel and pursuing medical malpractice claims on his behalf. In *Kumar*, the guardian was appointed on May 2, 1988, after the expiration of the statute of limitation, but she had already retained legal counsel on or about March 17, 1988, to inquire into, and prosecute if appropriate, medical malpractice claims on behalf of her mentally incompetent son, Mr. Hall. See id. In this case, by the time Ms. Deen was formally appointed conservatrix on May 7, 2008, she not only had obtained legal counsel to investigate a possible medical malpractice suit, but already had filed three lawsuits for medical and dental malpractice on her husband's behalf.

Accordingly, *Kumar* is controlling, and the trial court properly rejected Ms. Deen's equal protection challenge to the non-tolling statute for mental incompetence in medical malpractice actions. Moreover, as the analysis in Division 2 (b) indicates, we would reject Ms. Deen's equal protection challenge in the first instance even without the support of *Kumar*. As we did in *Kumar*, we expressly reserve judgment on "hypothetical situations in which an incompetent person might fail to meet the deadline of the statute of limitation because no person took an interest in his case, or because the person or persons who did act on his behalf lacked the ability to bring suit before the deadline." Id. at 644.

3. Ms. Deen also contends that the trial court erred in granting summary judgment to the defendants on the three claims she added after the defendants moved to dismiss the original complaint based on the medical malpractice statute of limitation. She describes these causes of action as simple negligence claims, not dental malpractice claims, which would make them timely, since the non-tolling statute is not applicable to ordinary negligence claims based on personal injury. Specifically, Ms. Deen contends that Dr. Stevens's staff negligently failed to follow his instructions: (1) to advise Mr. Deen of less expensive treatment alternatives that he could afford; (2) to tell Mr. Deen that he needed to make another appointment with Dr. Stevens; and (3) to report to Dr. Egleston the severity of the infection so that she could treat him appropriately. Ms. Deen insists that these claims do not call into question Dr. Stevens's professional judgment and challenge only his staff's performance of administrative or clerical duties to communicate what Dr. Stevens told them to Mr. Deen and Dr. Egleston. We will refer to these three causes of action as "negligent messenger" claims.

Ms. Deen argues that a case from this Court may be read to support the proposition that negligent messenger claims sound in simple negligence rather than medical malpractice. In *Jones v. Bates*, 261 Ga. 240 (403 SE2d 804) (1991), the plaintiff alleged that the defendants committed simple negligence and medical malpractice by leaving him unattended after surgery with a surgical lamp with the heat shield removed close to his foot, while his leg was still anesthetized, with the result that his foot was severely burned. See id. at 242. We upheld the trial court's dismissal of the medical malpractice cause of action for failure to file the required expert affidavit with the original complaint, but we reversed the dismissal of the simple negligence cause of action. We said that, "[s]imply because an alleged injury occurs in a hospital setting, a suit to recover for that injury is not necessarily a 'medical malpractice' action," and "not every suit which calls into question the conduct of one who happens to be a medical professional is a 'medical malpractice' action." Id. at 242 (citation omitted). We also said that "[m]edical malpractice exists only where the act or omission by the professional requires the exercise of expert medical judgment." Id.

Ms. Deen also points to the Court of Appeals' decisions holding that only when the claim "goes to the propriety of a professional decision rather than to the efficacy of conduct in the carrying out of a decision previously made" does it sound in professional malpractice rather than simple negligence. *Upson County Hosp. v. Head*, 246 Ga. App. 386, 389 (540 SE2d 626) (2000) (citing *Robinson v. Med. Center of Central Ga.*, 217 Ga. App. 8, 10 (456 SE2d 254) (1995)). The rule is that "[a]dministrative, clerical, or routine acts demanding no special expertise fall in the realm of simple negligence" rather than medical malpractice. Id. Consequently, the Court of Appeals has determined that "a nurse's failure to activate an alarm, as a doctor ordered, [is] ordinary negligence," and that "claims that employees failed to carry out instructions and that hospitals failed to have appropriate equipment allege[ ] ordinary negligence." Id. (footnotes omitted).

In response, the defendants ask us to rule broadly that negligent messenger claims are always subject to the two-year statute of limitation for medical malpractice claims, arguing that by definition such claims "aris[e] out of" the provision of professional services by a licensed professional. See OCGA § 9-3-70 ("As used in this article, the term 'action for medical malpractice' means any claim for damages resulting from the death of or injury to any person arising out of: (1) Health, medical, dental, or surgical service, diagnosis, prescription, treatment, or care rendered by a person authorized by law to perform such service or by any person acting under the supervision and control of the lawfully authorized person. . . .").

This view may find support in recent decisions of the Court of Appeals. See *Stafford-Fox v. Jenkins*, 282 Ga. App. 667, 672 (639 SE2d 610) (2006) (reversing denial of summary judgment on claims against professional corporation that staff's negligent failure to convey lab reports and other documents to the doctor caused him to misdiagnose the patient's severe vitamin B-12 deficiency because "[a]lthough this is a claim against the professional corporation based on ordinary negligence of its nonprofessional employees, the claimed damages still *arose out of* the misdiagnosis by [the doctor] involving the exercise of medical skill and judgment" (emphasis in original)); *Baskette v. Atlanta Center for Reproductive Medicine*, 285 Ga. App. 876, 880-881 (648 SE2d 100) (2007) (affirming grant of summary judgment on claim that now-infertile donor's stored sperm had all been thawed and used in the first attempt at impregnation due to staff's negligent failure to mark the specimen to indicate that no additional sperm would be available, because the donor's injury still arose out of the doctor's professional decision to employ conventional IVF rather than alternative procedure that would not have depleted the entire supply of stored sperm on the first attempt).

To decide this appeal, however, we need not resolve any tension between *Robinson, Head*, and similar cases on the one hand and *Stafford-Fox* and *Baskette* on the other, because we can decide this case under straightforward summary judgment principles. The defendants' summary judgment motion was properly supported, so Ms. Deen was required to come forward with some evidence showing, or supporting reasonable inferences of, a genuine issue of material fact. See *City of Atlanta v. North by Northwest Civic Assn.*, 262 Ga. 531, 536-537 (422 SE2d 651) (1992); *Yurevich v. Williams*, 302 Ga. App. 162, 162 (690 SE2d 476) (2010). Ms. Deen failed to do so.

(a) *The Staff's Alleged Failure to Advise Mr. Deen of Less Expensive Treatment Alternatives as Instructed by Dr. Stevens*. Dr. Egleston referred Mr. Deen to Dr. Stevens to determine whether re-treatment or less costly extraction was the appropriate course in Mr. Deen's situation. It was Dr. Stevens's professional opinion that Mr. Deen's tooth should be re-treated, not extracted. Assuming that opinion was correct, as we must do if this is a simple negligence claim and not a medical malpractice claim, a less expensive extraction procedure was not the proper course of treatment for Mr. Deen. Ms. Deen has produced no evidence that Dr. Stevens thought that less expensive treatment alternatives were available and appropriate and told his staff to convey that information to Mr. Deen; her allegations in this regard are mere speculation. Accordingly, Ms. Deen has failed to carry her burden to show that there is a genuine issue for trial on this claim, and summary judgment in favor of the defendants was appropriate.

(b) *The Staff's Alleged Failure to Tell Mr. Deen that He Needed to Make Another Appointment with Dr. Stevens.* The defendants produced Dr. Stevens's deposition testimony that he personally advised Mr. Deen of the need to schedule another appointment with him to perform the re-treatment procedure. Ms. Deen has set forth no specific facts by affidavit or otherwise contradicting Dr. Stevens's testimony. To the contrary, Ms. Deen's own deposition testimony shows that Mr. Deen knew that he needed to set up an appointment to see Dr. Stevens to have the re-treatment done but did not do so because he could not afford the procedure.

Ms. Deen focuses on what Dr. Stevens's staff did, not what Dr. Stevens did, and argues that there is a genuine issue of fact regarding whether the staff also told Mr. Deen that he needed to make another appointment. However, even genuine issues of fact will not prevent the entry of summary judgment if the disputed facts are not "material" to the legal issues in the case. OCGA § 9-11-56 (c) ("The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . ."). A plaintiff cannot avoid summary judgment by pointing to contradictory evidence in the record on an issue that makes no difference to the legal analysis. See *Porter v. Felker*, 261 Ga. 421, 421 (405 SE2d 31) (1991). See also *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-248 (106 SC 2505, 91 LE2d 202) (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." (emphasis in original)); id. at 249-250 ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." (citations omitted)).

There is undisputed record evidence that Dr. Stevens informed Mr. Deen of the need to set up an appointment for the re-treatment procedure, and that Mr. Deen understood that he needed to do so but did not do it because of financial constraints. Thus, even assuming a factual dispute as to whether Dr. Stevens's staff also told Mr. Deen he needed to make another appointment, that dispute would not be material. Accordingly, the summary judgment for the defendants on this claim was also proper.

(c) *The Staff's Alleged Failure to Report to Dr. Egleston the Severity of the Infection So that She Could Treat Him Appropriately.* Ms. Deen argues that summary judgment on this claim was inappropriate because the record contains conflicting evidence on whether Dr. Stevens or anyone in his office contacted Dr. Egleston to inform

her of Dr. Stevens's findings and recommendations, which allegedly affected Mr. Deen's subsequent treatment by Dr. Egleston's office. This argument founders on the fact that Dr. Egleston stated unequivocally in her deposition that such information would not have made any difference in how she treated Mr. Deen. Dr. Egleston was asked repeatedly about the connection between the infection examined by Dr. Stevens and her decision to have Mr. Deen undergo a gross debridement two weeks later. She testified clearly that in her professional opinion, the infection was a separate issue from the gross debridement and that, if anything, she would view a gross debridement as beneficial to Mr. Deen because it would remove some of the bacteria and plaque collected on his teeth. Thus, the dispute about whether and when Dr. Stevens or his staff informed Dr. Egleston of his findings and conclusions was immaterial to his subsequent treatment by her office, and summary judgment was proper.

*Judgment affirmed. All the Justices concur, except Hunstein, C. J., and Benham, J., who dissent.*

HUNSTEIN, Chief Justice, dissenting.

I respectfully dissent to the majority opinion upholding as constitutional a statute that eliminates the tolling of the two-year medical malpractice statute of limitation for those persons who are rendered mentally incompetent as a result of the conduct of health care professional defendants.

Since the earliest days of Georgia's existence as a state, we have undertaken to safeguard the legal interests of our weakest and most vulnerable citizens by tolling the running of statutes of limitation until the removal of their disabilities. Whether denominated as "idiots, lunatics or infants," Act of December 18, 1817, § 1, Lamar's Compilation of Georgia Laws, 1810-1819, p. 31, or "[m]inors and persons who are legally incompetent because of mental retardation or mental illness," OCGA § 9-3-90 (a), we have recognized that these categories of persons lack the ability to handle their legal affairs and that it offends all notions of decency and fairness for the law to require them to take legal action when they are so obviously incapable of doing so on their own.

With the enactment of OCGA § 9-3-73 (b), however, the Legislature chose to strip these most vulnerable citizens of the tolling protection historically granted to them. "[A]ll persons who are legally incompetent because of mental retardation or mental illness and all minors who have attained the age of five years *shall be subject to* the periods of limitation for actions for medical malpractice provided in this article." (Emphasis supplied.) Id. By so providing, the Legislature carved out a special exception to the traditional

tolling accorded to all of these vulnerable citizens except for those who would bring medical malpractice actions. As pertains to this case, this exception adversely affects in particular those mentally incompetent persons whose legal incompetency results from the conduct of the very health care professionals against whom the medical malpractice action would be initiated.

The devastating impact of an act of medical malpractice that takes a vibrant, competent human being and transmutes him or her into someone so mentally incapacitated that they are left legally incapable of handling their own affairs is hard for anyone who has not experienced such a nightmarish situation to truly imagine. Yet OCGA § 9-3-73 (b) eliminates any emotional recovery period for the family and friends of such a person. This statute forces families devastated by their loved one's debilitated condition to focus on matters such as law suits and attorneys, deadlines and depositions, guardians and expert witnesses, rather than on caring for their loved one, optimizing his or her recovery, addressing their own emotional turmoil and handling all of the other demands placed on them by the tragically-changed needs of their loved one.

Kenneth Deen was a mentally competent human being capable of handling his own legal affairs at the beginning of August 2005. By the end of that month he was permanently disabled and mentally incompetent[3] due, according to the lawsuit Linda Deen filed on behalf of herself and Mr. Deen, to alleged acts of malpractice by appellees in this case, among others. While the Deens' suit against the parties directly involved in the spinal cord procedure was filed within two years of that procedure, the suit alleging appellees' dental malpractice was not filed within two years of their alleged negligent acts or omissions, although it was filed prior to the probate court's appointment of Ms. Deen as her husband's conservator. In response to appellees' motion to dismiss based on OCGA § 9-3-73 (b), the Deens challenged the constitutionality of this statute on the basis that it treats mentally incompetent medical malpractice plaintiffs

---

[3] It is unquestioned in this case that Kenneth Deen is not legally incompetent "because of mental retardation or mental illness" under the plain meaning of those words. Rather than recognizing that the unambiguous language of OCGA § 9-3-73 (b) does not encompass the separate category of persons such as Deen who are rendered legally incompetent because of traumatic brain injury, this Court in *Kumar v. Hall*, 262 Ga. 639 (423 SE2d 653) (1992) relied on an ill-reasoned 1979 opinion from the Court of Appeals to judicially rewrite this statute so as to include persons who are mentally incompetent for *any* reason. Id. at 643 (1) (b). Although I joined in the dissent to that case, its holding is not based upon a clearly demonstrable historical error, e.g., *Bloomfield v. Liggett & Myers*, 230 Ga. 484 (198 SE2d 144) (1973) (this Court mistakenly interpreted a constitutional provision by relying on an unofficial, inaccurate account of convention discussions compiled by a newspaper reporter). Accordingly, I adhere to the doctrine of stare decisis and accept the flawed interpretation of OCGA § 9-3-73 (b) in *Kumar* as the law of this State.

different from mentally incompetent plaintiffs who seek to bring any other type of civil lawsuit. It is the majority's affirmance of the trial court's rejection of this challenge to which I object.[4]

The equal protection clause is in our Constitution to protect our weakest and most vulnerable citizens. It prohibits the State from treating similarly situated parties differently via the creation of disparate categories. See *Kelley v. Dept. of Human Resources*, 269 Ga. 384, 386 (3) (498 SE2d 741) (1998). Even accepting, arguendo, that the mentally incompetent are not entitled to treatment as a suspect class despite the reprehensible treatment to which they have been accorded historically,[5] the majority errs by finding any rational reason for the Legislature to treat mentally incompetent medical malpractice plaintiffs any different than mentally incompetent plaintiffs seeking to bring other civil tort actions.

As applicable to our equal protection clause, under the rational basis test a State legislative classification is permitted when the classification is based on rational distinctions and bears a direct and real relation to the legitimate object or purpose of the legislation. *City of Atlanta v. Watson*, 267 Ga. 185 (1) (475 SE2d 896) (1996). See also *Nichols v. Gross*, 282 Ga. 811, 813 (653 SE2d 747) (2007) (for equal protection purposes, classification created by the government need only bear a reasonable relationship to a legitimate goal). The majority relies upon the "rational, legitimate objectives" stated by the General Assembly in OCGA § 9-3-73 (f). While these *objectives* are rational and legitimate, they simply have no rational relationship to the classification created by subsection (b) in excluding medical malpractice actions from the tolling provisions for mentally incompetent plaintiffs. Five of the six objectives enumerated by the

---

[4] Because I would find that appellants' suit is timely filed, it is not necessary to address the manner in which the majority resolves appellants' simple negligence claims.

[5] Although society's recognition of the inability of mentally incompetent persons to handle their legal affairs led to the early enactment of tolling statutes, see, e.g., Act of December 18, 1817, § 1, Lamar's Compilation of Georgia Laws, 1810-1819, supra, there was little, if any, societal recognition of the right of mentally incompetent persons to be accorded equal respect under the law. See, e.g., *Buck v. Bell*, 274 U. S. 200 (47 SC 584, 71 LE 1000) (1927), in which the United States Supreme Court joined in the mistreatment of individuals with mental disability when it rejected the argument that state-imposed sterilization of a woman based on her mental disability was unconstitutional, with language by Justice Oliver Wendell Holmes that

> [w]e have seen more than once that the public welfare may call upon the best citizens for their lives. It would be strange if it could not call upon those who already sap the strength of the State, ... in order to prevent our being swamped with incompetence. It is better for all the world, if instead of waiting to execute degenerate offspring for crime, or to let them starve for their imbecility, society can prevent those who are manifestly unfit from continuing their kind. ... Three generations of imbeciles are enough.

Id. at 207.

General Assembly in subsection (f) are unquestionably so attenuated from the classification created in subsection (b) as to render the distinction irrational and irrelevant. Eliminating any tolling of the statute of limitation and requiring mentally incompetent persons to file suit within two years after the date of the malpractice bears no relationship whatsoever to providing quality healthcare; assuring the availability of physicians; preventing the curtailment of medical services; stabilizing insurance and medical costs; or providing for the public safety, health and welfare as a whole. Id. at (f). As to the sixth objective, "preventing stale medical malpractice claims," that goal was fulfilled by the Legislature's enactment for the first time of a five-year statute of "ultimate repose and abrogation" for medical malpractice actions. Id. at (c). As we have recognized, a statute of ultimate repose cannot be tolled for *any* reason. *Simmons v. Sonyika*, 279 Ga. 378 (614 SE2d 27) (2005). Hence, because the statute of repose would bar any medical malpractice claim filed by a mentally incompetent plaintiff more than five years after the date on which the act or omission occurred, no possible relevant connection exists between subsection (b) and this stated objective.

Although the majority lists these objectives, it makes no effort to explain how they or the objective identified by the Eleventh Circuit, namely, ensuring access to affordable healthcare, Maj. Op. at 600, are rationally related to the irrational classification created by OCGA § 9-3-73 (b). Instead, the majority justifies its holding on the basis that there has been "vigorous public debate with 'powerful arguments on both sides of the issue,' [cit.]" Maj. Op. at 606, and contends that it is "not the role of the courts" to weigh policy arguments and to decide which course is "most prudent," but that " 'it is quite enough to note the existence of a viable, ongoing debate' and to find, in accordance with the Eleventh Circuit, that the General Assembly's 'approach to a particularly thorny legislative problem — embodied in its statutes of limitations [sic] — is rational.' [Cit.]" Maj. Op. at 606.

This language in the majority's opinion reveals that it has confused the *wisdom* of legislation with its *constitutionality*. As I have frequently stressed in opinions I have authored, it is not the role of courts to be concerned with the wisdom of an act passed by our State Legislature and signed into law by our State Executive. E.g., *DeKalb County v. Perdue*, 286 Ga. 793 (8) (692 SE2d 331) (2010); *Dev. Auth. of DeKalb County v. State of Ga.*, 286 Ga. 36 (4) (684 SE2d 856) (2009). Whether a statute is prudent or rash, whether it is directed toward substantive or trivial concerns, whether it should be enacted in light of the arguments for or against it — those matters address themselves to the wisdom of the enactment. However, it is uncontrovertedly the role of this Court to be concerned with the constitutionality of any Georgia statute, Art.

VI, Sec. VI, Par. II (1), Ga. Const. of 1983, regardless of whether or not there has been "vigorous public debate" over "'a particularly thorny legislative problem.'" Maj. Op. p. 606. Public debate, regardless how "vigorous," can never serve to shield legislation from constitutional review.

The classification adopted in OCGA § 9-3-73 (b), by denying mentally incompetent plaintiffs in medical malpractice actions the same tolling of the statute of limitation accorded all other mentally incompetent plaintiffs in every other type of civil claim, has *no rational relationship* to the goals set forth in OCGA § 9-3-73 (f). It is not rational to treat mentally incompetent people the same way we treat mentally competent people. It is not rational to toll limitation periods for mentally incompetent people for purposes of every civil cause of action except for the one type of civil action — medical malpractice — where tolling is most essential. It is not rational to encumber these medical malpractice plaintiffs' access to the courts to obtain redress for their catastrophic injuries by eliminating the tolling period these plaintiffs need in order to hold accountable the parties responsible for those injuries. It is not rational to create the cruel reality where the families of these catastrophically injured plaintiffs would be better situated legally if their loved one died immediately rather than survived in a state of mental incompetence — better situated legally because, with their loved one dead, at least then the family would have breathing space until an executor or administrator was appointed before they would have to deal with the legal turmoil arising from the defendants' acts of malpractice. See OCGA § 9-3-92 (five-year tolling for unrepresented estate).

How can we consider "rational" the disparate treatment that OCGA § 9-3-73 (b) accords our most vulnerable citizens in medical malpractice actions? This statutory classification is so arbitrary and unreasonable that it makes the standard of review the majority claims to apply into nothing more than a "rubber stamp" approval of legislation that favors the politically powerful at the expense of our mentally disabled citizens and our injured children. As jurists we cannot shirk our constitutional duties and sanction the denial of "equal protection of the laws" to our most vulnerable citizens. It follows that I would strike down OCGA § 9-3-73 (b) as violative of the equal protection clause and reverse the trial court's grant of appellees' motion to dismiss.

I am authorized to state that Justice Benham joins in this dissent.

DECIDED JULY 23, 2010.

*Savage, Turner, Pinson & Karsman, Brent J. Savage, Kathryn H. Pinckney, Clark & Williams, Nathan T. Williams,* for appellants.
*Hall, Booth, Smith & Slover, Norman D. Lovein, Steven P. Bristol,* for appellees.