## Yellow Cab Company, Appellee, v. Thomas T. Hoskin Company, Appellant.

### Gen. No. 24,563.

1. AUTOMOBILES AND GARAGES, § 3*—*when owner may replevy automobile distrained by municipal corporation for damage to latter's property.* The owner of an automobile was entitled to replevy such automobile from the bailiff of a municipal corporation known as Commissioners of Lincoln Park, who held it pursuant to a distress levied by such corporation because the automobile injured a light standard in Lincoln Park, and pending redress of the damage.

2. AUTOMOBILES AND GARAGES, § 2*—*when municipal corporation cannot distrain automobile injuring such corporation's property.* A municipal corporation known as Commissioners of Lincoln Park had no right, under the common-law principle permitting the owner of

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

land to distrain cattle, *damage feasant* upon said land, to distrain and hold an automobile which had run into and injured a light standard in the park, until the owner should make satisfaction for the damage done.

3. AUTOMOBILES AND GARAGES, § 3*—*what is remedy of municipal corporation when automobile injures its property.* The remedy for the damage done to property of a municipal corporation known as Commissioners of Lincoln Park by an automobile was by an appropriate action at law, and not by distress under the theory of *damage feasant.*

Appeal from the Municipal Court of Chicago; the Hon. HUGH J. KEARNS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1918. Affirmed. Opinion filed October 10, 1919.

ROBERT R. BALDWIN, for appellant.

D'ANCONA & PFLAUM, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

Plaintiff commenced an action in replevin against the defendant in the Municipal Court of Chicago, alleging that it was the owner and lawfully entitled to the possession of an automobile, known as a "Yellow Cab, license No. 25453," and that on June 24, 1918, defendant wrongfully took and wrongfully detained said cab from the plaintiff. The writ was executed by the bailiff of the Municipal Court by his taking the cab from the defendant and delivering it to the plaintiff. The defendant, in its affidavit of merits, alleged that "as the bailiff of the Commissioners of Lincoln Park, a municipal corporation, it held possession of the said automobile in its warehouse, and justly so, because it says that the plaintiff, through its servant and employee, ran upon, broke and injured a certain island light, the property of the Commissioners of Lincoln Park, then and there standing upon one of the driveways in Lincoln Park, and also left said automobile

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

standing on one of the driveways of Lincoln Park to the obstruction of the public travel thereon, in violation of the ordinances of Lincoln Park, and the said Commissioners of Lincoln Park by their proper officers for and in the name of a distress for the damages so occasioned took said automobile and delivered it to this defendant for safe-keeping until plaintiff should pay to said Commissioners of Lincoln Park the damages so incurred." The trial court found the right to the possession of the automobile in the plaintiff and assessed plaintiff's damages at the sum of one cent. Judgment was entered on the finding and defendant appealed.

The case was tried on an agreed statement of facts in substance as follows: That the ownership of the automobile was in the plaintiff; that the automobile, driven by an employee of plaintiff, came in contact with an electric light standard (commonly known as an island light) the property of the Commissioners of Lincoln Park and situated in one of the driveways or boulevards of Lincoln Park, and damaged said standard to the extent of about $20, and the automobile was overturned and prior to its removal was obstructing said driveway; that it is not known whether the collision of the automobile with said standard was the result of the negligence of the driver of the automobile or that of some other person, and that the negligence of said driver as a matter of law is not involved; that section 98 of the ordinances of the Commissioners of Lincoln Park, a municipal corporation, provides that "no person shall cut, break, mark upon, or in any way injure or deface any of the trees, * * * lamp posts, * * * buildings, or other constructions or property, in or upon said parks, boulevards, streets or driveways, under a penalty of not to exceed $50 for each and every offense"; that said automobile was seized not to recover said penalty but as security for the

damage to the light standard; that an officer, acting under the direction of the Superintendent of Lincoln Park, took possession of the automobile and placed the same with the defendant until such time as the damages occasioned by plaintiff should be paid to the Commissioners of Lincoln Park; that prior to the removal of the overturned automobile from said driveway plaintiff undertook to remove the same, but said Commissioners of Lincoln Park refused to permit its removal by plaintiff, claiming the right to seize and hold the same until plaintiff would agree to pay for the cost of restoring said light standard, which plaintiff then declined to do; that prior to the commencement of this replevin suit plaintiff demanded of defendant that he surrender possession of the automobile but defendant refused; and that at the time the automobile was replevied the defendant was in the possession of the same "as the agent and bailiff of the Commissioners of Lincoln Park."

Counsel for the defendant here argue that the trial court erred in finding the right to the possession of the automobile in plaintiff and entering judgment on the finding. The argument is, in substance, that the Commissioners of Lincoln Park had the legal right to seize the automobile and impound it with defendant until the plaintiff should pay for the damage done to said light standard, under the principle of the common law permitting the owner of land to distrain cattle, *damage feasant* upon said land, until the owner of the cattle should make satisfaction for the damage done. It will be noticed from the agreed statement of facts that the negligence of the driver of the automobile is not herein involved, and that the automobile was seized and attempted to be held solely as security for the damage to the light standard, and not to recover the penalty provided by the ordinance referred to.

Blackstone in his Commentaries, in writing upon the subject of Trespass to Real Property (2 Cooley's

Black., book III, ch. 12, page 211) says:

"A man is answerable for not only his own trespass, but that of his cattle also; for, if by his negligent keeping they stray upon the land of another (and much more if he permits, or drives them on), and they there tread down his neighbor's herbage, and spoil his corn or his trees, this is a trespass for which the owner must answer in damages, and the law gives the party injured a double remedy in this case; by permitting him to distrain the cattle thus *damage feasant,* or doing damage, till the owner shall make him satisfaction; or else by leaving him to the common remedy *in foro contentioso,* by action. And the action that lies in either of these cases of trespass committed upon another's land, either by a man himself or his cattle, is the action of trespass *vi et armis;*   *   *   * for the law always couples the idea of force with that of intrusion upon the property of another. And herein, if any unwarrantable act of the defendant or his beasts in coming upon the land be proved, it is an act of trespass for which plaintiff must recover some damages; such, however, as the jury shall think proper to assess."

Blackstone, in writing on the subject of Remedy by Distress (2 Cooley's Black., book III, ch. 1, page 6) also says:

"A fifth case, in which the law allows a man to be his own avenger, or to minister redress to himself, is that of distraining cattle or goods for nonpayment of rent, or other duties; or, distraining another's cattle, *damage feasant,* that is, doing damage or trespassing, upon his land. The former intended for the benefit of landlords, to prevent tenants from secreting or withdrawing their effects to his prejudice; the latter arising from the necessity of the thing itself, as it might otherwise be impossible at a future time to ascertain whose cattle they were that committed the trespass or damage.   *   *   *   A distress, *districtio,* is the taking a personal chattel out of the possession of the wrongdoer into the custody of the party injured, to procure

a satisfaction for the wrong committed.''

From the above quotations, relative to the principle of the common law permitting the seizure of cattle *damage feasant* upon land, it appears that there is embodied therein the idea of the *intrusion* of the cattle upon the owner's land; also, that the reason for distraining the cattle, rather than bringing an action at law for the damages, arises ''from the necessity of the thing itself, as it might otherwise be impossible at a future time to ascertain whose cattle they were that committed the trespass or damage.'' In the present case the plaintiff, by its driver or agent, in driving the automobile along said driveway, was not an intruder. The automobile was lawfully there. It was being driven in a public park and along a public driveway, when the damage to the light standard was done. Furthermore, the Commissioners of Lincoln Park, through its said officer, then either knew or could have known who was the owner of the automobile, and the ''necessity'' for a distress did not exist.

In *Storey v. Robinson,* 6 Term R. 138 (decided in 1745), the action was trespass for seizing and leading away plaintiff's horse upon which he was riding. The defendant had distrained the horse *damage feasant* in the defendant's grounds. It was held by Lord Kenyon that the distress could not be supported for the reason, as stated, that ''if it were permitted to a party to distrain a horse, while any person is riding him, it would perpetually lead to a breach of the peace.'' In *Field v. Adams,* 12 Adol. &, El. 649 (decided in 1840), it was held that to a plea in trespass, justifying the taking of a horse, cart and other chattels, *damage feasant,* it is a good replication that the horse, cart and chattels were, at the time of the distress, in the actual possession and under the personal care of, and then being used by, the plaintiff. In the present case the automobile at the time the damage

was done was being driven by an employee of plaintiff.

Our conclusion is that under the facts of this case and under the principle of the common law mentioned, the municipal corporation, Commissioners of Lincoln Park, was not entitled to be its "own avenger," or to "minister redress" to itself, by the seizure or distress of the automobile, but for the damage done should have proceeded by an appropriate action at law. We do not think that the case of *Ambergate, etc., Ry. Co. v. Midland Ry. Co.*, 2 El. & Bl. Q. B. 792, cited by counsel for defendant, under its peculiar facts, is applicable to the facts of the present case. In our opinion the judgment of the trial court was right and it is therefore affirmed.

*Affirmed.*