313 Ga. 69
FINAL COPY

S21G0029. RCC WESLEY CHAPEL CROSSING, LLC et al. v.
ALLEN et al.

LaGrua, Justice.

We granted certiorari in this case to decide whether there is a common-law right that permits private property owners to immobilize vehicles that are not authorized to be on their property. For the reasons that follow, we conclude that the common-law rights the defendants alluded to in the courts below — namely, the right to remove trespassing vehicles and an alleged right to impound trespassing vehicles — do not apply to the defendants' vehicle immobilization practice. However, because we disagree with the Court of Appeals' conclusion that "the trial court did not err in finding no common law right to immobilize a vehicle absent an enabling statute or ordinance," *RCC Wesley Chapel Crossing v. Allen*, 355 Ga. App. XXVII (Case No. A20A0547) (June 29, 2020) (unpublished), and any reliance on that conclusion in affirming the

trial court's order granting Plaintiff Forrest Allen's motion for class certification, see slip op. at 10-15, we vacate the judgment of the Court of Appeals and remand the case to the Court of Appeals with direction to remand to the trial court for reconsideration of the proposed class.

1. *Pertinent facts and procedural history.*

(a) *Factual background.*

The relevant facts, as summarized by the Court of Appeals, see *Allen*, slip op. at 4-5, are as follows: On February 5, 2018, Plaintiff parked his vehicle in a parking lot located at 2440 Wesley Chapel Road (the "Wesley Chapel Lot") in DeKalb County, and nonparty State Impound Authority, LLC d/b/a VPE LLC ("State Impound") immobilized Plaintiff's vehicle by placing a "boot" on one of the tires. In order to remove the boot, Plaintiff was required to pay State Impound $650. Plaintiff paid State Impound the requisite fee to remove the boot from his vehicle.

(b) *Trial court proceedings.*

In February 2018, Plaintiff filed a lawsuit in the State Court of

Clayton County on behalf of himself and a putative class of similarly situated persons against Defendants RCC Wesley Chapel Crossing, LLC, Little Giant Farmers Market Corporation, Dollar Tree Stores, Inc., River City Capital, LLC, and River City Capital Property Management, LLC[1] for negligence, premises liability, false imprisonment, conversion, and violation of the Georgia Racketeer Influenced and Corrupt Organizations Act. Plaintiff claimed that Defendants "hired, authorized, or otherwise provided material support to" third parties that immobilized vehicles located on Defendants' property with boots or similar devices and required the owners or operators of the vehicles to pay a fee in order to have the immobilizing devices removed. Plaintiff moved to certify the action on behalf of a proposed class of similarly situated persons under OCGA § 9-11-23,[2] asserting that between February 2013 and the

---

[1] The record reflects that Defendants consist of the owner and operator of the Wesley Chapel Lot and the commercial tenants of the adjacent shopping center.

[2] Pursuant to OCGA § 9-11-23 (a):
One or more members of a class may sue or be sued as representative parties on behalf of all only if:

present, at least 250 persons "have been booted, and have paid a fine for removal of said device" at the Wesley Chapel Lot. Following briefing and oral argument, the trial court granted Plaintiff's motion, certifying the following class: "A class of all persons who have been booted, and have paid a fine for removal of said device, at 2440 Wesley Chapel Rd. (Parcel ID 15 131 03 010) or 2460 Wesley Chapel Rd. (Parcel ID 15 130 02 110) from February 5, 2013, through present."

In the order granting class certification, the trial court reasoned that "[t]he act of placing a boot on a vehicle and refusing to remove it until payment is received is the imposition of a lien on that vehicle," and "[s]uch a lien cannot exist at common law as lien laws are in derogation of the common law." On this basis, the trial court concluded that

> (1) The class is so numerous that joinder of all members is impracticable;
> (2) There are questions of law or fact common to the class;
> (3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) The representative parties will fairly and adequately protect the interests of the class.

4

Defendants cannot immobilize vehicles, or demand a fee to remove a vehicle immobilization device, absent an enabling statute. . . . There is no enabling statute or ordinance at the location where Plaintiff and all other class members were booted.

The trial court thus determined that each of the class member's claims involved the common question of whether Defendants had "a legal right to immobilize vehicles at the subject properties" — a question that did not depend on "individualized issues of fact" or the class members' "legal status at the property."

Defendants appealed, asserting that the trial court erred in granting class certification because Plaintiff failed to meet all the requirements of OCGA § 9-11-23 (a). In particular, citing *Reinertsen v. Porter*, 242 Ga. 624 (250 SE2d 475) (1978), Defendants asserted that the trial court erred in determining that there was commonality among the putative class because some of the potential class members were trespassers on the Wesley Chapel Lot and Defendants have a common-law right to immobilize trespassing vehicles on their property.

(c) *The Court of Appeals' decision.*

5

In June 2020, the Court of Appeals affirmed the trial court, holding, among other things, that (1) the trial court did not err in concluding that there is no right to immobilize a vehicle absent an enabling statute or ordinance; and (2) the trial court properly found that liability could be determined solely by looking to Defendants' conduct because, even if some class members were parked on the Wesley Chapel Lot without authorization, there was no showing in the record that the immobilization of the class members' vehicles or the process for releasing immobilized vehicles back to their owners differed materially. See *Allen*, slip op. at 8-10. In so holding, the Court of Appeals rejected Defendants' reliance on *Reinertsen*, noting that, although *Reinertsen* recognized a landowner's right at common law to remove with due care the property of others left on his land without permission, "nothing in the Supreme Court's opinion recognizes a common law right to place immobilizing devices on vehicles illegally parked on private property against the will of its owner for profit." *Allen*, slip op. at 12 n.1.

We granted Defendants' petition for certiorari to address

6

whether a common-law right exists allowing a private property owner to immobilize a vehicle parked on its property without permission.

2. *There is no common-law right allowing private property owners to immobilize unauthorized vehicles parked on their property.*

In response to our certiorari question, Defendants claim that, at common law, private property owners are permitted to immobilize vehicles that are trespassing on their property.[3] In support of this claim, Defendants rely, as they did on appeal to the Court of Appeals, on *Reinertsen*, asserting that the common-law right to remove trespassing property recognized in *Reinertsen* encompasses a right to immobilize trespassing vehicles. Defendants have now expanded upon this claim by asserting that the common-law

---

[3] We note that there is generally a common-law right to exclude others from private property. See *Pope v. Pulte Home Corp.*, 246 Ga. App. 120, 120 (1) (539 SE2d 842) (2000) ("The term 'property' includes not only the land possessed, but also the rights of the owner in relation to that land. The owner has the rights to possess, use and dispose of the property and the corresponding right to exclude others from using the property."). However, our analysis in this case is limited to the circumstances at issue here — namely, the practice of immobilizing unauthorized vehicles parked on private property through the use of a device.

doctrine of "distress damage feasant" also allows them to engage in the self-help remedy of impounding another person's property when it is wrongfully on their land.[4] We disagree and conclude that neither the right to remove trespassing property discussed in *Reinertsen* nor distress damage feasant supports the vehicle immobilization practice Defendants engaged in here.

The doctrine of distress damage feasant is a narrow remedy at common law that recognizes a landowner's right to impound trespassing livestock causing actual damage to his property and to hold it as security until the animal's owner is ascertained and

---

[4] Defendants also claim that there is a common-law right to immobilize a vehicle pursuant to consent given by its owner or operator. In support of this claim, Defendants assert that signs were posted on the Wesley Chapel Lot identifying Defendants' right to immobilize unauthorized vehicles parked there, and thus individuals who illegally parked on the lot notwithstanding posted warnings were consenting to having their vehicles immobilized. Defendants further claim that the common-law right of freedom of contract allows vehicle owners and operators to read these signs and implicitly accept the terms thereof by parking on the Wesley Chapel Lot. However, these claims were not raised by Defendants in the trial court or the Court of Appeals and are raised for the first time on certiorari in this Court; thus, we will not address them. See *Stephens v. State*, 289 Ga. 758, 763 (2) (b) (1) n.7 (716 SE2d 154) (2011) (holding that because the appellant's argument in this Court "was not presented to the trial court or the Court of Appeals," we "will not address it"). We do note that Defendants have cited no precedent that applies these alleged common-law rights to the vehicle immobilization practice utilized here.

compensates the landowner for his damages. See 3 William Blackstone, Commentaries on the Laws of England 7 (1st ed. 1768) ("Another injury, for which distresses may be taken, is where a man finds beasts of a stranger wandering in his grounds, damage-feasant; that is doing him hurt or damage, by treading down his grass, or the like, in which case the owner of the soil may distrain them till satisfaction be made him for the injury he has thereby sustained."). In the alternative, the landowner has the right to sue the animal's owner in trespass for damages. See *Thombley v. Hightower*, 52 Ga. App. 716, 716 (184 SE 331) (1936) (holding that a suit for damages to crops from a trespass committed by the defendant's cattle was properly brought by the landowner). As this Court explained in *Bonner v. DeLoach*, 78 Ga. 50 (2 SE 546) (1886):

> The provisions of the common law regulating this matter, render the defendant answerable for not only his own trespass, but that of his cattle also; for if, by his negligent keeping, they stray upon the land of another (and much more if he prompts or drives them on,) and they there tread down his neighbor's herbage, and spoil his corn or his trees, this is a trespass for which the owner must answer in damages; and the law gives the party injured a double remedy in this case, by permitting him

9

to distrain the cattle thus *damage feasant* till the owner shall make him satisfaction, or else by leaving him to the common remedy *in foro contentioso* by action, wherein, if any unwarrantable act of the defendant or his beasts in coming upon the land be proved, it is an act of trespass for which the plaintiff must recover some damages; such, however, as the jury shall think proper to assess.

Id. at 51 (citation and punctuation omitted; emphasis supplied and in original). See also *King v. Ford,* 70 Ga. 628, 630 (1883) (holding that at common law, cattle wandering about "damage feasant" might be "taken up and impounded" by the landowner).

However, Defendants have cited no authority from Georgia or any other jurisdiction where a court applied the distress damage feasant doctrine to anything other than livestock or where the court held that a landowner has a common-law right to impound and hold a chattel, such as an automobile, whose owner is easily discoverable. Indeed, there appears to be no legal authority recognizing a common-law right to immobilize unauthorized vehicles located on private property and hold them against the owner's will until payment is received. And, we agree with the Court of Appeals that Defendants' reliance on *Reinertsen* for any such proposition is

10

misplaced. See *Reinertsen*, 242 Ga. at 628 (1) (holding that "[a]t common law in Georgia[,] a landowner had the right to *remove* property of others which had been left on his land without his consent, provided he used due care not to damage the property upon its removal" (emphasis supplied)). The act of immobilizing a trespassing vehicle stands in sharp contrast to the common-law authority to remove trespassing chattel from property because immobilizing the chattel *perpetuates* the trespass. Moreover, in Georgia, the common-law remedy of removing trespassing vehicles has been displaced, at least in part, by Georgia's towing statute, OCGA § 44-1-13, which provides specific guidelines for the removal and impoundment of vehicles in this state.

The only American case of which we are aware where the distress damage feasant doctrine was asserted as a justification for detaining an automobile is *Yellow Cab Co. v. Thomas T. Hoskin Co.*, 215 Ill. App. 11 (1919) — a case cited by Plaintiff. In *Yellow Cab*, the Illinois Court of Appeals concluded that while the doctrine applied to livestock, it did not apply to automobiles. See id. at 16-

11

17. The court explained that "the law allows a man to be his own avenger" in "distraining another's cattle" that is "doing damage or trespassing, upon his land" because

> the reason for distraining the cattle, rather than bringing an action at law for the damages, arises from the necessity of the thing itself, as it might otherwise be impossible at a future time to ascertain whose cattle they were that committed the trespass or damage.

Id. at 15-16 (punctuation omitted). The court held that the doctrine did not apply to an automobile because the landowner "either knew or could have known who was the owner of the automobile, and the necessity for a distress did not exist." Id. at 16 (punctuation omitted). The court further noted that distraining an automobile could lead to a "breach of the peace" — reflecting a trend in the law to limit self-help distress remedies because of the risk of danger they impose, particularly if extended to vehicles. Id. (punctuation omitted).

We note that Defendants cite two cases from other jurisdictions, which they claim recognize a common-law right to immobilize unauthorized vehicles, but neither case involves or

12

addresses the distress damage feasant doctrine or a property owner's right to immobilize trespassing vehicles at common law. See, e.g., *Millet v. Logan City*, 147 P3d 971, 977 (II) (A) (Utah Ct. App. 2006) (noting the existence of an ordinance allowing property owners to boot trespassing motor vehicles when they comply with certain regulations, but primarily addressing the fact that the private vehicle immobilization company at issue was not a state actor for purposes of the plaintiff's civil rights claim); *Kirschbaum v. McLaurin Parking Co.*, 656 SE2d 683, 687 (N.C. App. 2008) (addressing a North Carolina statute that authorized private parking lot owners to boot unauthorized vehicles).

Further, even if the common-law principle of distress damage feasant otherwise applied to the circumstances of this case and allowed the vehicle immobilization practice at issue, Defendants' claim would nevertheless fail because, as noted above, this common-law right required a trespass and proof of actual damage. See *Bonner*, 78 Ga. at 52 ("[T]he plaintiff may elect, at common law, whether he will proceed by impounding the cattle *doing damage to*

13

*his land and crops* and holding them for *the satisfaction of his damages*, or will resort to his suit and contest his rights in the matter in the ordinary courts of justice." (emphasis supplied)). See also *Vaspor v. Edwards*, 12 Mod. 658, 660 (1701) (Eng.) (holding that "damage feasant" is "the strictest distress" in that the chattel at issue "must be actually doing damage, and are only distrainable for the damage they are then doing, and continuing"). Though Defendants argue that they have incurred damages in this case, nothing appears in the record to support any damages suffered by Defendants. Instead, the record reflects that when State Impound immobilized a vehicle at the Wesley Chapel Lot by booting it, the vehicle owners were required to pay State Impound a flat fee for removal of the boot, regardless of how long the vehicle had been parked there, and State Impound retained the entire fee as profit. Defendants also concede that this fee was a fine imposed to deter future trespasses and not to compensate for any actual damages caused by the trespassing vehicles.

Accordingly, we conclude that even if Plaintiff's vehicle or other

vehicles were trespassing on Defendants' property, the common-law rights of distress damage feasant and of removing trespassing chattels would not allow Defendants to immobilize these vehicles. We also conclude that Defendants had other remedies available to them for such a trespass, including the statutory right of removal and impoundment under OCGA § 44-1-13.

3. *Class certification.*

Turning to the issue of class certification, we note that, in certifying the class in this case, the trial court determined that booting a vehicle and removing the boot when payment is received is "the imposition of a lien on that vehicle" and that "[s]uch a lien cannot exist at common law as lien laws are in derogation of the common law." On this basis, the trial court held that Plaintiff's claims satisfied the commonality and predominance requirements of OCGA § 9-11-23 (a) (2) and (3), irrespective of each class member's legal status at the property, and concluded as follows:

> Defendants have not alleged facts showing that Plaintiff's booting was materially different than the immobilization of other class members' vehicles. Defendants instead

15

allege that Plaintiff was a trespasser, and that the legal status of the class members is an issue of fact that must be resolved for each booting at the subject properties. As stated above, because: (1) placing a boot on a vehicle and refusing to remove it until a fee is paid is asserting a lien on that vehicle; (2) liens must be granted by statute or ordinance; and (3) it is undisputed that no statute or ordinance gave Defendants the authority to boot vehicles at the subject properties, the lawfulness of Defendants' detention of the class members will not depend on the class members' legal status at the property (invitee, licensee, or trespasser). Therefore, given the uniform nature of Defendants' booting practices, and the lack of individualized facts, Plaintiff's false imprisonment [and other] claims satisfy the commonality and predominance requirements for class certification.

The trial court's determination that liens cannot exist at common law because "lien laws are in derogation of the common law" is incorrect. For example, the doctrine of distress damage feasant, which we have analyzed above, is a common-law lien; it simply does not apply here because it does not apply to trespassing vehicles and the fee charged for removal of the immobilization device was not compensation for any actual damages incurred.

Accordingly, we conclude that the trial court's holding that a lien cannot exist at common law was erroneous. The trial court's

conclusion about the legal status of the class members — i.e., that their claims will not depend on their legal status at Defendants' property — may ultimately be correct, but if the trial court reaches that conclusion, it should do so by applying the correct law. To the extent the Court of Appeals concluded that the trial court did not err in finding no common-law right to immobilize vehicles exists, the Court of Appeals was correct. But, to the extent the Court of Appeals conflated the existence of a common-law right with a statute or ordinance that might have displaced it, see *Allen*, slip op. at 10, that conclusion was error. Therefore, we vacate the judgment of the Court of Appeals affirming the trial court's certification of the class and remand the case to the Court of Appeals to direct the trial court to conduct further proceedings consistent with this opinion.

*Judgment vacated and case remanded. All the Justices concur, except Peterson, J., disqualified.*

Decided December 14, 2021 – Reconsideration denied January 11, 2022.

Certiorari to the Court of Appeals of Georgia -- 355 Ga. App. XXVII.

*Hall Booth Smith, John E. Hall, Jr., Walter J. Bibbins, Jr., Brittanie D. Browning; Moore Ingram Johnson & Steele, Ryan M. Ingram, David P. Conley, Marie L. Wilcox; Cozen O'Connor, Kenan G. Loomis*, for appellants.

*Wetherington Law Firm, Matthew Q. Wetherington, Sr., Robert N. Friedman; Bondurant Mixson & Elmore, Frank M. Lowery IV, Joshua F. Thorpe*, for appellees.

*Hawkins Parnell & Young, Kimberly D. Stevens, Willie C. Ellis, Jr., LeRyan P. Lambert; Copeland Stair Kingma & Lovell, John C. Rogers*, amici curiae.