**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: August 26, 2025

S25G0276. WILLIAMS v. REGENCY HOSPITAL COMPANY, LLC et al.

LAND, Justice.

Andreana Williams, as conservator for her mother Michelle Hewett, filed a medical malpractice action against Regency Hospital Company, LLC, Regency Hospital Company of Macon, LLC `(collectively "Regency"), and Regency's employee Jacquita Baldwin, APRN (collectively "Appellees"). Appellees moved to dismiss based on the expiration of the two-year statute of limitation for medical malpractice actions. In response, Williams argued that the statute of limitation was tolled because Hewett "meets the definition of incompetency under OCGA § 9-30-90 (a)" and that OCGA § 9-3-73(b),[1] which provides that the statute of limitation for medical

---

[1] OCGA § 9-3-73(b) provides, in relevant part, that notwithstanding

malpractice claims shall not be tolled for plaintiffs who are "legally incompetent," violates Hewett's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The trial court granted Appellees' motion to dismiss, ruling that this Court had already decided the constitutional issue contrary to Hewett's position in *Deen v. Stevens*, 287 Ga. 597 (2010). The Court of Appeals affirmed. See *Williams v. Regency Hosp. Co., LLC*, 373 Ga. App. 83, 85–86 (2024). We granted certiorari to consider whether *Deen* controls this case, and if not, whether OCGA § 9-3-73(b) violates Hewett's rights under the Equal Protection Clause by arbitrarily treating mentally incompetent medical-malpractice plaintiffs differently than mentally incompetent plaintiffs in other kinds of lawsuits.[2]

---

OCGA § 9-3-90, "all persons who are legally incompetent because of intellectual disability or mental illness ... shall be subject to the periods of limitation for actions for medical malpractice provided in this article." OCGA § 9-3-90(a) provides: "Individuals who are legally incompetent because of intellectual disability or mental illness, who are such when the cause of action accrues, shall be entitled to the same time after their disability is removed to bring an action as is prescribed for other persons."

[2] Specifically, we posed the following questions:

1. Did the Court of Appeals correctly determine that the

2

We conclude that Williams's contentions are largely controlled by *Deen*; that *Deen* was correctly decided; and that the contentions she makes that were not addressed in *Deen* have no merit. Accordingly, we affirm.

1. This Court reviews de novo a trial court's ruling on a motion to dismiss and construes the pleading being challenged, i.e., the complaint, in favor of the party who filed it. *Northway v. Allen*, 291 Ga. 227, 229 (2012). So viewed, Williams's complaint alleges that her mother, Hewett, suffered a stroke and became permanently disabled in early September 2020. She was treated at Atrium Health and, on September 23, 2020, was discharged to Regency for long-term care. Between September 23, 2020, and October 22, 2020, Regency's staff noted that Hewett was suffering from macroglossia,

_____

petitioner's claim here was the same as the plaintiff's claim in *Deen v. Stevens*, 287 Ga. 597 (2010), such that it rejected the petitioner's challenge on the ground that it was bound by *Deen*?

2. Does OCGA § 9-3-73(b) arbitrarily treat similarly situated mentally incompetent medical malpractice plaintiffs differently from incompetent plaintiffs in other kinds of lawsuits by not allowing the benefit of tolling to the medical malpractice plaintiffs in violation of the Equal Protection Clause of the United States Constitution?

or an enlarged tongue, and that the condition worsened over time. On October 22, 2020, Hewett was transferred back to Atrium, where she was admitted and a doctor documented that Hewett "had sever[e] unalleviated chronic dental trauma to the tongue from chewing and biting without deterrents at outside facility." Hewett's tongue was amputated while at Atrium, and on December 9, 2020, she was discharged to a different long-term care facility.

Williams was appointed as Hewett's conservator and guardian on August 2, 2022. On April 7, 2023, more than two years after the medical care and injury at issue in the case, Williams filed suit against Appellees, asserting claims for medical malpractice and ordinary negligence. In her complaint, Williams alleged that the statute of limitation was tolled until August 2, 2022, by OCGA § 9-3-90. OCGA § 9-3-90(a) provides that "[i]ndividuals who are legally incompetent because of intellectual disability or mental illness, who are such when the cause of action accrues, shall be entitled to the same time after their disability is removed to bring an action as is prescribed for other persons." Appellees filed motions to dismiss all

4

claims, arguing that the claims were barred by the two-year statute of limitation for medical malpractice claims under OCGA § 9-3-71(a); that OCGA § 9-3-90 was inapplicable; and that the "non-tolling" provision of OCGA § 9-3-73(b) applied, citing this Court's holding in *Deen*.

In response to the motions, Williams argued that OCGA § 9-3-73(b) violated Hewett's equal protection rights under the United States Constitution because the statute "treats mentally incompetent Plaintiffs in medical malpractice actions differently, and unequally, from mentally incompetent Plaintiffs in non-medical malpractice actions." While acknowledging that in *Deen*, this Court held that OCGA § 9-3-73(b) did not violate the Equal Protection Clause, Williams attempted to characterize her challenge to the statute differently and argued that the rationale underlying *Deen* "has been rendered constitutionally invalid as it is arbitrary, and thus no longer serves a rational purpose."

Specifically, Williams argued that the General Assembly's stated objectives of the non-tolling provision to "ensure its citizens

5

affordable access to quality healthcare" and to limit "the filing of stale medical malpractice suits" are no longer "reasonably furthered by discriminating against mentally incompetent medical malpractice Plaintiffs" and that "empirical studies have demonstrated that the effect of medical malpractice lawsuits on the affordability of healthcare is 'largely theoretical.'" Additionally, Williams contended that the expert affidavit requirement for professional malpractice actions, OCGA § 9-11-9.1,[3] and the five-year statute of repose for medical malpractice actions, OCGA § 9-3-71(b), serve the same purpose as OCGA § 9-3-73(b) (according to Williams, the reduction of medical malpractice claims and the corresponding benefit of ensuring affordable access to quality healthcare), thereby rendering the latter statute unnecessary and without a rational basis. Finally, Williams argued that given the relatively small amount of medical malpractice cases involving

---

[3] OCGA § 9-11-9.1(a) provides, in relevant part: "In any action for damages alleging professional malpractice ... the plaintiff shall be required to file with the complaint an affidavit of an expert competent to testify, which affidavit shall set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim."

6

mentally incompetent plaintiffs, "OCGA § 9-3-73(b)'s limitation on tolling of such cases could not logically reduce healthcare costs so as to warrant disparate treatment."

In its order granting the motions to dismiss, the trial court determined that Williams's constitutional challenge to OCGA § 9-3-73(b) was foreclosed by this Court's decision in *Deen.* The trial court thus concluded that Hewett's incapacity did not toll the statute of limitation for her medical malpractice claims and that Hewett's claims were therefore barred. The trial court also ruled that none of Williams's claims sounded in ordinary negligence.[4]

Williams directed her appeal to this Court, but we transferred the case to the Court of Appeals. See *Williams v. Regency Hosp. Co., LLC,* 318 Ga. 145, 147 (2024). The Court of Appeals affirmed, holding that Williams's equal protection challenge to OCGA § 9-3-73(b) was controlled by *Deen* and that it was bound by that decision.

---

[4] The Court of Appeals affirmed the trial court's ruling that Williams's claims did not sound in ordinary negligence. See *Williams*, 373 Ga. App. at 86–89. Williams raised that issue in her petition for certiorari, but the Court did not grant certiorari on that question. Thus, we do not address it here.

See *Williams*, 373 Ga. App. at 85–86. We granted Williams's petition for certiorari, posing the questions above.

2. We first address whether *Deen* controls the outcome of this case without any need for further analysis or whether Williams has raised additional arguments that must be addressed because they were not raised in *Deen*. We conclude that while *Deen* addressed and rejected most of the arguments made by Williams and therefore largely controls the outcome of this case, it did not address all of them. We address and reject those arguments below.

"Duly enacted statutes enjoy a presumption of constitutionality, and the party challenging the statute bears the burden to show that the statute manifestly infringes upon a constitutional provision or violates the rights of the people." *Taylor v. Devereux Found., Inc.*, 316 Ga. 44, 52 (2023) (cleaned up). In *Deen*, this Court held that mental incompetence is not a suspect classification for equal protection purposes and therefore, applied rational-basis review to the Deen plaintiff's constitutional challenge

to OCGA § 9-3-73(b). *Deen*, 287 Ga. at 602–04. Williams concedes that rational basis review is the correct standard here.

To evaluate whether OCGA § 9-3-73(b) violates the equal-protection rights of mentally incompetent plaintiffs with medical malpractice claims, as compared to mentally incompetent plaintiffs with other types of civil claims, we apply the same standard that was applied in *Deen*: "In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Deen*, 287 Ga. at 604 (citation omitted). The critical question is whether Williams has met her burden of showing that "suspending the tolling provisions for mental incompetence in medical malpractice cases is not rationally related to the General Assembly's stated objectives." Id. at 605. See also *Gliemmo v. Cousineau*, 287 Ga. 7, 12 (2010) (holding that the burden on a plaintiff in an equal protection challenge is to show that "the

9

legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the government decisionmaker." (cleaned up)).

In *Deen*, the plaintiff, on behalf of herself and her mentally incompetent husband, filed a medical malpractice action against her husband's endodontist more than two years after the husband had received treatment. 287 Ga. at 598–99. The plaintiff argued that the two-year statute of limitation for her medical malpractice claim should be tolled under OCGA §§ 9-3-90(a) and 9-3-91[5] and that applying the anti-tolling provision of OCGA § 9-3-73(b) violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article I, Section I, Paragraph II of the Georgia Constitution of 1983 by arbitrarily discriminating against mentally incompetent adults as a class. 287 Ga. at 599. Applying rational-basis review, this Court held that the General

[5] OCGA § 9-3-91 provides, in relevant part: "If any person suffers a disability specified in Code Section 9-3-90 after his right of action has accrued and the disability is not voluntarily caused or undertaken by the person claiming the benefit thereof, the limitation applicable to his cause of action shall cease to operate during the continuance of the disability."

10

Assembly's decision to not have a tolling provision for mental incompetence in medical malpractice cases was rationally related to its stated objectives of ensuring "affordable access to quality healthcare" and "stem[ming] … the filing of stale medical malpractice lawsuits." Id. at 604–08 (citation omitted). We accordingly upheld the constitutionality of the statute and rejected the equal-protection challenge.

Williams attempts to distinguish *Deen* on the basis that it focused on discrimination against mentally incompetent adults as a class whereas her challenge is more narrowly focused on discrimination against mentally incompetent plaintiffs in medical malpractice cases. However, because our Court's analysis in *Deen* focused on the statute's treatment of mentally incompetent adults with respect to the very issue in this case (the non-tolling of the statute of limitations in the medical malpractice context), this is a distinction without a legal difference. We conclude that *Deen* is virtually indistinguishable from this case and that the comparative classifications are essentially the same in both cases – mentally

11

incompetent plaintiffs who assert medical malpractice claims versus mentally incompetent plaintiffs who assert non-medical malpractice claims. For this reason, we reject Williams's argument that her challenge is materially different than the challenge in *Deen*.

*Deen* also addressed and rejected other arguments that are the same as the arguments Williams now makes. Although Williams argues that "empirical studies have demonstrated that the effect of medical malpractice lawsuits on the affordability of healthcare is 'largely theoretical,'" the majority opinion in *Deen* declined to "wade deeply into the ongoing debate over healthcare reform," 287 Ga. at 605, emphasizing that as long as there is a rational basis for the statute, these types of policy decisions fall within the purview of the legislature and not the courts. Thus, the argument made by Williams regarding the "largely theoretical" effect that medical malpractice lawsuits have on health care costs was considered and rejected in *Deen*. See 287 Ga. at 605 ("[W]e do not determine whether medical malpractice lawsuits are a significant driver of rising healthcare costs, nor whether tort reform has proved effective at

improving access to quality care").

In addition, Williams argues that the expert affidavit requirement for professional malpractice actions, OCGA § 9-11-9.1, and the five-year statute of repose for medical malpractice actions, OCGA § 9-3-71(b), serve the same purpose as OCGA § 9-3-73(b) by reducing the number of medical malpractice claims and ensuring affordable access to quality healthcare and that these statutes therefore render OCGA § 9-3-73(b) unnecessary and without a rational basis. However, Williams's contentions regarding the statute of repose's effect on the constitutional analysis were likewise considered and rejected in *Deen*. The *Deen* majority squarely rejected the assertion that the statute of repose fulfilled the General Assembly's goal of preventing stale medical-malpractice claims and rendered OCGA § 9-3-73(b) without a rational basis, stating: "[T]he dissent would find that allowing the mentally incompetent only two years to file a medical malpractice action is utterly 'arbitrary and unreasonable,' … but allowing them only five years to file suit is just fine. Under rational basis review, such line-drawing is the work of

legislators, not judges." *Deen*, 287 Ga. at 607. The majority opinion's analysis of this issue in *Deen* controls, and Williams has provided us with no reason to depart from it here.

3. Williams's argument concerning the effect of OCGA § 9-11-9.1 was not addressed by *Deen*. Therefore, we address it now to resolve her Equal Protection challenge. Williams contends that the expert affidavit requirement found in OCGA § 9-11-9.1 undercuts the stated objective of OCGA § 9-3-73(b)'s non-tolling provision, presumably because both statutes are designed to reduce the number of medical malpractice actions that are filed in Georgia, thereby furthering the legislative goal of ensuring affordable access to quality healthcare. Williams's argument appears to be that because OCGA § 9-11-9.1 restricts the filing of professional negligence actions by generally requiring that they be accompanied by an expert affidavit, OCGA § 9-3-73(b)'s additional restriction on the filing of medical malpractice actions (specifically, its non-tolling provision) is without a rational basis. We reject this contention and

conclude that Williams's equal protection challenge to OCGA § 9-3-73(b) fails. [6]

The expert affidavit requirement is not new. OCGA § 9-11-9.1 was originally enacted as part of the Medical Malpractice Act of 1987, well before this Court's decision in *Deen*. 1987 Ga. Laws, p. 887 et seq. Moreover, the fact that the General Assembly has chosen to incrementally address what it perceives to be a problem by taking multiple approaches to address the same issue – in this case, its desire to ensure affordable access to quality healthcare by placing restrictions on medical malpractice claims – does not necessarily mean that one or more of the approaches is not rationally related to a legitimate government objective. See *Deen*, 287 Ga. at 605 (applying rational basis review and noting that the General

---

[6] Additionally, Williams argues that her challenge to OCGA § 9-3-73(b) differs from that made in *Deen* due to a change in societal views of the mentally incompetent since *Deen* was decided, suggesting that we should treat the mentally incompetent as a suspect class for purposes of our equal protection analysis. However, because this issue was not raised before the trial court, we do not answer it. See *RCC Wesley Chapel Crossing, LLC v. Allen*, 313 Ga. 69, 72 n.4 (2021) (after granting certiorari, declining to address issues not raised in the trial court or the Court of Appeals).

Assembly, "concerned about the proliferation of medical malpractice suits and their adverse impact on the quality of healthcare, is lawfully permitted to fashion a partial solution to a far more general problem" (cleaned up)).

Williams has not cited any case where this Court, or any other court, has held that a legislative solution is not rationally related to a legitimate government objective simply because there may be other viable approaches to address the problem or simply because there may be another, broader, and perhaps even "better" solution to the problem. These are policy decisions which the General Assembly is uniquely situated to address, and under federal rational basis review, courts may not substitute our policy preferences for theirs. See *Deen*, 287 Ga. at 606 ("It is not the role of the courts, however, to weigh those policy arguments and decide on that course which is most prudent; instead, it is quite enough to note the existence of a viable, ongoing debate and to find … that the General Assembly's approach to a particularly thorny legislative problem— embodied in its statutes of limitations—is rational." (cleaned up)).

Thus, like the plaintiff in *Deen*, Williams has failed to meet the high burden required to demonstrate that the statute is unconstitutional. We therefore conclude that *Deen* largely controls Williams's constitutional challenge to OCGA § 9-3-73(b); that the expert affidavit requirement found in OCGA § 9-11-9.1 does not change the analysis or aid Williams's position; and that Williams has not met her burden of showing that OCGA § 9-3-73(b) is not rationally related to a legitimate legislative objective. For these reasons, we affirm the judgment of the Court of Appeals.

*Judgment affirmed. All the Justices concur.*