**FIFTH DIVISION**
**MERCIER, C. J.,**
**MCFADDEN, P. J., and RICKMAN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 7, 2024**

# In the Court of Appeals of Georgia

A24A1035. WILLIAMS v. REGENCY HOSPITAL COMPANY, LLC et al.

RICKMAN, Judge.

Andreana Williams, as Guardian and Conservator of Michelle Hewett, appeals the trial court's order granting the motions to dismiss filed by Regency Hospital Company, LLC ("Regency"); Regency Hospital Company of Macon, LLC ("Regency Macon"); and Jacquita Baldwin. Williams contends that the trial court erred in ruling that OCGA § 9-3-73 (b) does not violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and in ruling that she did not assert a cognizable claim for simple negligence. For the reasons that follow, we affirm.

The record shows that on April 7, 2023, Williams filed a complaint against Regency, Regency Macon, and Baldwin based on care and treatment Hewett received at Regency Macon between September 23, 2020, and October 22, 2020. Williams alleged that Hewett became permanently incapacitated on September 4, 2020, and that Williams was appointed Hewett's guardian and conservator on August 2, 2022.[1] Williams further alleged that, as guardian and conservator, she had a cause of action against the defendants for professional negligence and ordinary negligence, as well as "all other applicable theories of liability."

All three defendants filed motions to dismiss based on the expiration of the two-year statute of limitation applicable to medical malpractice actions and pointed out that the limitation period is not tolled for mentally incompetent medical malpractice plaintiffs. See OCGA § 9-3-71 (a); OCGA § 9-3-73 (b).[2] Baldwin also moved to

---

[1] An August 2, 2022 probate court order finding Hewett permanently incapacitated and appointing Williams as her guardian and conservator is attached to the complaint.

[2] Pursuant to OCGA § 9-3-71 (a), "[e]xcept as otherwise provided in this article, an action for medical malpractice shall be brought within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred." As relevant here, OCGA § 9-3-73 (b) provides, "[n]otwithstanding Article 5 of this chapter, all persons who are legally incompetent because of intellectual disability or mental illness . . . shall be subject to the periods of limitation for actions

dismiss based on objections to the OCGA § 9-11-9.1 expert affidavit attached to the complaint. Williams responded that OCGA § 9-3-73 (b) is unconstitutional because it treats mentally incompetent plaintiffs in medical malpractice actions differently, and unequally, from mentally incompetent plaintiffs in non-medical malpractice actions. Williams also argued that she had stated a claim for simple negligence that was not subject to dismissal because OCGA § 9-3-90 (a) tolled the statute of limitation for that claim.[3] In response to Baldwin's objections to her expert, Williams pointed to a recent decision from this Court holding that, for purposes of an OCGA § 9-11-9.1 expert affidavit, registered nurses and nurse practitioners are in the same profession, see *Bryant v. Okafor*, 367 Ga. App. 629, 632 (a) (887 SE2d 689) (2023), and that her expert possessed the requisite professional knowledge and experience.

The trial court granted all three motions to dismiss. With respect to Williams's constitutional challenge to OCGA § 9-3-73 (b), the trial court concluded that the Supreme Court of Georgia had "already decided this issue against the Plaintiff,"

for medical malpractice provided in this article."

[3] OCGA § 9-3-90 (a) provides that "[i]ndividuals who are legally incompetent because of intellectual disability or mental illness, who are such when the cause of action accrues, shall be entitled to the same time after their disability is removed to bring an action as is prescribed for other persons."

citing *Deen v. Stevens*, 287 Ga. 597 (698 SE2d 321) (2010). The trial court also concluded that Williams's action was, in its entirety, an action for medical malpractice. Because the trial court determined that Williams's claims were barred by the statute of limitation, it did not reach Baldwin's challenges to Williams's expert. Williams then appealed to the Supreme Court of Georgia.

The Supreme Court concluded that it lacked jurisdiction over this appeal because

> [e]ven presuming that this case raises a novel constitutional question, the trial court did not distinctly rule on any such question because it concluded that the appellant's arguments were foreclosed by this Court's existing precedent in *Deen* [*v. Stevens*, 287 Ga. 597], and the court did not address the appellant's arguments to the extent that they raised an issue distinct from the one addressed in *Deen*.

*Williams v. Regency Hosp. Co.*, 318 Ga. 145, 147 (897 SE2d 466) (2024).[4] Accordingly, the Supreme Court transferred the appeal to this Court with the following instruction:

---

[4] We note that the dissent, authored by Justice McMillian and joined by Justices Bethel, Colvin, and Pinson, concluded that the Supreme Court did have jurisdiction over this appeal because it presents a novel constitutional question and "in granting the motions to dismiss on statute of limitations grounds and dismissing the case with prejudice, the trial court necessarily rejected the constitutional claim that appellants raised even though the court did not expound on its reasoning." *Williams*, 318 Ga. at 149.

"If the Court of Appeals, following its review of the appeal, disagrees with the trial court's rationale for granting the respondents' motions to dismiss, it may vacate that portion of the trial court's order and remand the case to the trial court for consideration in the first instance of any novel constitutional question." Id.

1. Williams contends that the trial court erred in ruling that OCGA § 9-3-73 (b) does not violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. She argues that the statutory distinction between mentally incompetent plaintiffs in medical malpractice actions and mentally incompetent plaintiffs in non-medical malpractice actions is not rationally related to a legitimate government objective.

This Court has limited jurisdiction to review constitutional questions. We have jurisdiction over cases where "the constitutionality of a state law is questioned if the law has been held to be constitutional against the same attack being made, as such a case requires merely an application of unquestioned and unambiguous constitutional provisions." (Citations and punctuation omitted.) *City of Decatur v. DeKalb County*, 284 Ga. 434, 436-437 (2) (668 SE2d 247) (2008).

As previously stated, the statute of limitation for a medical malpractice action is two years from the date of injury. OCGA § 9-3-71 (a). Statutes of limitation are generally tolled during periods of legal incompetence due to intellectual disability or mental illness. OCGA § 9-3-90 (a); OCGA § 9-3-91. But OCGA § 9-3-73 (b) eliminates those tolling provisions for mentally incompetent plaintiffs bringing actions for medical malpractice. OCGA § 9-3-73 also provides that

> [t]he findings of the General Assembly under this Code section include, without limitation, that a reasonable relationship exists between the provisions, goals, and classifications of this Code section and the rational, legitimate state objectives of providing quality health care, assuring the availability of physicians, preventing the curtailment of medical services, stabilizing insurance and medical costs, preventing stale medical malpractice claims, and providing for the public safety, health, and welfare as a whole.

OCGA § 9-3-73 (f).

In *Deen*, the Georgia Supreme Court considered whether OCGA § 9-3-73 (b) "irrationally discriminates against the mentally incompetent in violation of the Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and Article I, Section I, Paragraph II of the Georgia Constitution of 1983." *Deen*, 287

Ga. at 597. After determining that rational basis review should be applied, the Supreme Court identified the critical question as "whether suspending the tolling provision for mental incompetence in medical malpractice cases has a rational relationship to the Legislature's objectives." Id. at 604 (2) (b). The Supreme Court deemed it "unnecessary to wade deeply into the ongoing debate over healthcare reform to determine whether the non-tolling statute is rationally related to the type of legitimate governmental interests identified by our Legislature[,]" and instead concluded "it is quite enough to note the existence of a viable, ongoing debate and to find . . . that the General Assembly's approach to a particularly thorny legislative problem—embodied in its statutes of limitations—is rational." (Citation and punctuation omitted.) Id. at 605-606 (2) (b). Ultimately, the Supreme Court rejected Deen's equal protection challenge to the statute.[5] See id. at 609 (2) (c).

Here, Williams pursues the same attack as the plaintiff in *Deen*. She argues that OCGA § 9-3-73 (b) violates equal protection because it is not rationally related to any legitimate legislative objective. Because the Supreme Court in *Deen* held OCGA § 9-3-

---

[5] We note that when considering whether it had jurisdiction over this appeal, the Supreme Court characterized its holding in *Deen* as a determination "that the non-tolling provision of OCGA § 9-3-73 (b) is rationally related to the General Assembly's objectives set out in OCGA § 9-3-73 (f)[.]" *Williams*, 318 Ga. at 146.

7

73 (b) to be constitutional against that attack, jurisdiction over this appeal lies in this Court. See *Zepp v. Mayor & Council of City of Athens*, 255 Ga. 449, 451 (2) (339 SE2d 576) (1986); *Brooks v. Meriwether Mem. Hosp. Auth.*, 246 Ga. App. 14, 15 (1) (539 SE2d 518) (2000). This Court is bound by *Deen* and thus must reject Williams's equal protection challenge. See *Brooks*, 246 Ga. App. at 15 (1).

2. Williams contends that the trial court erred in concluding that she did not allege a cognizable claim for simple negligence.

"On appeal, we conduct a de novo review of a trial court's ruling on a motion to dismiss." (Citations, punctuation, and footnote omitted.) *Houston Hosps., Inc. v. Reeves*, 356 Ga. App. 50, 51 (846 SE2d 219) (2020). "Although complaints against professionals may state claims based on ordinary as well as professional negligence, the complaint's characterization of claims as stating professional or ordinary negligence does not control." (Citation and punctuation omitted.) *Health Mgmt. Assoc. v. Bazemore*, 286 Ga. App. 285, 286 (648 SE2d 749) (2007). Instead, "[w]hether a complaint alleges ordinary or professional negligence is a question of law for the court." (Citation and punctuation omitted.) Id. at 287.

> When assessing whether the complaint alleges ordinary negligence, we
> must liberally construe the allegations of the complaint and only

8

conclude that ordinary negligence has not been alleged if it is foreclosed by the complaint itself. In determining, as a matter of law, whether the complaint alleged claims based on ordinary negligence, professional negligence, or both, . . . we look solely to the allegations of the complaint and liberally construe the allegations to state a claim if, within the framework of the complaint, the plaintiff may introduce evidence which will sustain a grant of relief based on the claim. We will conclude that the complaint does not allege a claim only if the allegations of the complaint disclose with certainty that the plaintiff would not be entitled to relief on the claim under any state of provable facts.

(Citations and punctuation omitted.) *Ziglar v. St. Joseph's/Candler Health System, Inc.*, 341 Ga. App. 371, 374 (800 SE2d 395) (2017).

Here, according to the complaint, on September 4, 2020, Hewett was diagnosed at Atrium Health with an intracerebral hemorrhage with left hemiparesis, neurogenic shock, and acute respiratory failure. On September 23, 2020, Hewett was discharged from Atrium Health and transferred to Regency Macon for long-term care. Upon admission to Regency Macon, a nurse documented that Hewett's tongue was red and swollen. In the days that followed, seven additional nurses documented that Hewett's tongue was swollen, red, dry, and cracked. From September 28 to October 20, Baldwin documented that Hewett's tongue condition (macroglossia) was worsening,

9

with increased swelling and bloody secretions. On October 22, Hewett was transferred by ambulance to Atrium Health, where a doctor documented that Hewett had severe "unalleviated chronic dental trauma to the tongue from chewing and biting without deterrents at outside facility." Hewett was subsequently diagnosed with an infection of her tongue and ultimately had her tongue amputated.

The complaint alleged that the care and treatment of Hewett by the nurses, staff, and employees of Regency Hospital and Regency Macon did not meet the standard of care employed by nurses, staff, and employees generally when presented with a patient with symptoms and clinical findings like those of Hewett. The complaint also alleged that Baldwin, in her care and treatment of Hewett, did not meet the medical and nursing standard of care employed by nurses generally when presented with a patient with symptoms and clinical findings like those of Hewett. And further, the complaint alleged that these deviations from the standard of care proximately and foreseeably caused Hewett serious injuries, resulting in unnecessary pain and suffering and additional medical expenses.

The complaint also referenced the attached expert affidavit from a registered nurse, who opined that the nursing staff at Regency Hospital, including Baldwin, were

negligent in at least two ways: (1) failing to provide proper and adequate oral care to Hewett based on her diagnosis of macroglossia; and (2) failing to provide adequate interventions for her condition, such as bite blocks and oral care, to prevent tongue trauma.

Williams contends that, based on the facts alleged in the complaint, she could prove that the failure of defendants to implement adequate interventions, such as bite blocks, was the result of their failure to keep bite blocks on hand and/or the failure to follow Regency's policies and procedures for the use of bite blocks, and that such claims would sound in ordinary negligence. She relies on *Dent v. Mem. Hosp. of Adel*, 270 Ga. 316 (509 SE2d 908) (1998), where the Georgia Supreme Court distinguished between ordinary negligence and professional malpractice based on whether the alleged act or omission by a medical professional required the exercise of "expert medical judgment." Id. at 318. The Supreme Court further held:

> Whether to use certain equipment at all, what type of equipment to use, and whether certain equipment should be available in a specific case certainly are decisions which normally require the evaluation of the medical condition of a particular patient and, therefore, the application of professional knowledge, skill, and experience. However, the failure to operate equipment correctly or in accordance with a doctor's

instructions or to keep certain equipment on hand is only ordinary, not professional, negligence.

Id. at 318.

Here, assessing the severity of Hewett's condition and prescribing the appropriate treatment, including the use of appropriate equipment, would constitute the exercise of "medical judgment." See *Dent*, 270 Ga. at 318; *Ziglar*, 341 Ga. App. at 375 (a "medical judgment" clearly would be involved in assessing the severity of the patient's wounds and prescribing a course of treatment). Although Williams alleged in the complaint that she had a cause of action against the defendants for professional negligence and ordinary negligence, she specifically alleged her claims in terms of medical negligence, referring to the defendants' alleged failure to meet the appropriate standard of care when presented with a patient with Hewett's symptoms and clinical findings. Thus, even construing the allegations of her complaint broadly

in her favor, we conclude that the entirety of Williams's claims fall within the realm of professional negligence and were properly dismissed based on the expiration of the applicable statute of limitation. See *Ziglar*, 341 Ga. App. at 375.

*Judgment affirmed. Mercier, C. J., concurs and McFadden, P. J., concurring fully in part and specially in part.*

# In the Court of Appeals of Georgia

A24A1035. WILLIAMS v. REGENCY HOSPITAL COMPANY,

    LLC et al.

McFADDEN, Presiding Judge, concurring fully in part and specially in part.

I fully concur in Division 2 of the majority opinion. I agree that the trial court correctly held that the underlying complaint did not assert a cognizable claim

14

for simple negligence. But I concur specially to Division 1 of the majority opinion. I agree that the trial court correctly rejected Appellant Andreana Williams's equal protection challenge to OCGA § 9-3-73 (b), but I reach that conclusion by a different route.

OCGA § 9-3-73 (b) sets a statute of limitations for medical malpractice claims brought by certain legally incompetent persons that is shorter than the limitations period for other claims brought by such persons. Williams brought and the trial court rejected an equal protection challenge to that statute. The trial court relied on *Deen v. Stevens*, 287 Ga. 597 (698 SE2d 321) (2010). *Deen* had rejected an earlier equal protection challenge to the same statute, which argued that OCGA § 9-3-73 (b) arbitrarily discriminated against mentally incompetent adults as a class. Williams now argues that OCGA § 9-3-73 (b) discriminates between subclasses of mentally incompetent adults.

Those arguments are closely related, but distinct. In its transfer order, our Supreme Court held that when the trial court "concluded that the appellant's arguments were foreclosed by this Court's existing precedent in *Deen*, [it] did not address the appellant's arguments to the extent that they raised an issue distinct from the one addressed in *Deen*." *Williams v. Regency Hosp. Co.*, LLC, 318 Ga. 145, 147 (897 SE2d 466) (2024).

Our Supreme Court has exclusive appellate jurisdiction over "all cases in which the constitutionality of a law . . . has been drawn into question[.]" Ga. Const. of 1983, Art. VI, Sec. 6, Par. II (1). But it is well established that its jurisdiction over such questions obtains only if the questions are novel and they have been ruled on by the trial court. *Williams*, supra; *In re K. R. S.*, 284 Ga. 853 (672 SE2d 622) (2009). So the Supreme Court transferred the case to us with the following instruction:

> If the Court of Appeals, following its review of the appeal, disagrees
> with the trial court's rationale for granting the respondents' motions
> to dismiss, it may vacate that portion of the trial court's order and
> remand the case to the trial court for consideration in the first instance
> of any novel constitutional question.

That assignment leaves us standing on shaky ground. To the extent that Williams raised a constitutional challenge that *is* distinct from the one addressed in *Deen*, the Constitution appears to deny us jurisdiction to agree or disagree with the trial court's disposition. Of course, our Supreme Court has the final word on the meaning of our Constitution. See *Simmons v. England*, 323 Ga. App. 251, 252 n. 1 (746 SE2d 862) (2013), affirmed 295 Ga. 1 (757 SE2d 111) (2014) (addressing the allocation of jurisdiction between the appellate courts). But we must do our best to discharge our assignment agreeably to the text of the Constitution.

I would hold, as a general proposition, that cases in which prior authority raises the *same question* as the one at bar are a subset of those in which that prior authority is *controlling*. So I would affirm on the basis that the trial court correctly found that the question before us is not the same question as one at issue in *Deen,* but that *Deen* is nevertheless controlling — and consequently that there was no need for a novel constitutional analysis.